### FARMERS' & MERCHANTS' BANK OF CATLETTSBURG, KY., v. FEDERAL RESERVE BANK OF CLEVELAND, OHIO, et al.

(District Court E. D. Kentucky. October 14, 1922.)

1. **Corporations ⬅️662—Requisites for suit against foreign corporation stated.**

As the matter is usually put by the Supreme Court of the United States, in its opinions, in order to confer jurisdiction of a suit to establish a personal liability against a foreign corporation, two things are essential. It must, at the time the suit is brought, be doing business in the state where it is brought of a certain character, and process must have been served therein on an authorized agent; but, fundamentally, its real position is that, in order thereto, what is essential, in addition to such service, is, not that it is then doing business in such state, but that it is reasonable for the corporation to be subject to suit therein.

2. **Banks and banking ⬅️288½, New, vol. 11A Key-No. Series—Federal Reserve Bank may be sued in foreign state.**

Jurisdiction exists against a Federal Reserve Bank located in another state of a suit to enjoin it from unlawfully presenting, by its agent, over the counter of a state bank, checks drawn on the state bank, where process was served within the state on the agent employed to present the checks, both on the ground that it is then doing business in such state of the required character, or, better, on the ground that it is reasonable for it to be sued therein.

See, also, 286 Fed. 610.

Martin & Smith, of Catlettsburg, Ky., for plaintiff.

Worthington, Browning & Reed, of Maysville, Ky., and Squire, Sanders & Dempsey, of Cleveland, Ohio, for defendants.

COCHRAN, District Judge. This cause is before me on the defendant bank's motion to quash the service of process upon it, on the ground that it is a national corporation, and was not, at the time of such service, doing business in this state, as required, in order to subject it to suit therein. It is the Federal Reserve Bank of the Fourth District of the Federal Reserve System, and its offices are at Cleveland, Ohio. That which is complained of in the bill is certain wrongful conduct taking place, in the main, at Catlettsburg in this district. That consists in the presentation and demand of payment over the counter

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in cash of checks drawn on plaintiff, a state bank doing business at Catlettsburg, by its depositors in favor of persons at a distance, which came into the defendant's hands for collection. The cause of action is the same as that involved in the cases of American Bank & Trust Co. v. Federal Reserve Bank (C. C. A.) 269 Fed. 4; American Bank & Trust Co. v. Federal Reserve Bank, 256 U. S. 350, 41 Sup. Ct. 499, 65 L. Ed. 983; Brookings State Bank v. Federal Reserve Bank (D. C.) 277 Fed. 430.

The individual defendant, Mary B. McCall, a resident of that city, is the agent of the defendant, and it is through her as such agent that such presentation and demand was being made; such checks being sent by it to her by mail for that purpose. Not otherwise was the defendant bank doing business in this state when the suit was brought. The process herein as to such defendant was served on Miss McCall as its agent. The suit was originally brought in the state court, in whose territorial jurisdiction Catlettsburg is situated, and was removed thence to this court upon the joint petition of the defendants upon the ground that it arose under the Constitution and laws of the United States. It is the contention of the defendant bank that the question of jurisdiction is the same as if it were a state corporation, foreign to this state, and not a national corporation. I will dispose of the question on the assumption that this contention is sound.

It is conceded, as it must be, that, at the time this suit was brought, the individual defendant was acting for the defendant bank, as its agent, and had been so acting for it for over a year and a half before the suit was brought. The defendant bank's position is that the doing of business in this state of a particular character, at the time suit was brought, was essential to jurisdiction, and that such action on its behalf did not constitute the doing of business of that character. As to whether this position is sound is the question before me. In determining it I will confine myself to the cases in the Supreme Court of the United States.

[1] In the case of Peterson v. C., R. I. & P. R. R. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841, which involved a suit against a railroad corporation in a foreign jurisdiction, that court, in its opinion, set forth the essentials of jurisdiction in these words:

"This case presents a question of jurisdiction to be determined as one of fact. It may be divided into two propositions: First. Was the Pacific Company doing business in the state of Texas? Secondly. If so, were the alleged agents served with process in the state of Texas duly authorized as such and competent to be thus served, in such wise as to give jurisdiction of the Pacific Company?"

In so far as this statement is concerned, the doing of any business in the foreign jurisdiction will meet the first requirement. But such is not the case. The doing of any business, no matter what its character is, will not meet it. It must be of a particular character to do so. This appears from the opinion in the case of Green v. C., B. & Q. R. R. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, argued and submitted the same day the Peterson Case was decided. That was an action in the federal court for the Eastern district of Pennsylvania against

an Iowa railroad corporation whose line of railroad ran westward from Chicago through the state of Colorado. It was to recover damages for personal injuries received along its line in Colorado. The corporation maintained an office in Philadelphia and had in charge thereof a district freight and passenger agent, who had under him several clerks and various traveling passenger and freight agents. It advertised this in many ways to the public. The business of this agent was to solicit and procure passengers and freight to be transported over its lines. In cases of passengers he purchased for them a ticket over one of the railroads running west from Philadelphia to Chicago and sold to them prepaid orders, which gave them the right, on their arrival at Chicago, to receive from the corporation tickets over its road, for cash paid him. He also sold, occasionally, to railroad employees, who already had tickets over intermediate lines, orders for reduced rates over its lines. As to freight he sold nothing and received no payments for the transportation thereof, but, for the convenience of shippers who had obtained bills of lading from the initial line for goods routed over its lines, he gave in exchange therefor bills of lading over its lines, which provided that they should not be in force until the freight had been actually received by it. The process had been served on this agent. Notwithstanding the extensive character of the business transacted on the defendant corporation's behalf in Philadelphia, jurisdiction was denied. The opinion is quite brief. It contains little, if any, argumentation. It is confined largely to stating the facts and conclusions reached. Concerning the business so done in Philadelphia it is said:

"It is obvious that the defendant was doing there a considerable business of a certain kind, although there was no carriage of freight or passengers."

Again:

"The business shown in this case was in substance nothing more than that of solicitation."

The conclusion reached was thus stated:

"Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this [i. e., solicitation] is not enough to bring the defendant within the district so that process can be served upon it."

I would suggest that the statement that the business transacted by the agent was in substance nothing more than solicitation was hardly correct, and that what the agent did went beyond mere solicitation. He purchased tickets over intermediate lines for passengers and sold them prepaid orders over the corporation's lines and received the cash therefor. He also sold for cash to railroad employees, who already had tickets over such lines, such orders at reduced rates; and as to freight he issued bills of lading over the corporation's line.

The test for determining whether the doing of business in a state is sufficient to give jurisdiction, if service of process has been had on an authorized agent, was put in this way:

"Its validity depends upon whether the corporation was doing business in that district in such a manner and to such an extent as to warrant the inference that through its agents it was present there."

The essentials of jurisdiction set forth in quotations from the Peterson Case and the test of the first one put forward in the Green Case were combined in the opinion in the case of Philadelphia & Reading R. Co. v. McKibbin, 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710, in these words:

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state the process will be valid only if served upon some authorized agent."

This statement may be taken as the typical way in which the Supreme Court presents the essentials of jurisdiction of such a suit. What it presents is a dualism. Those essentials consist of two ultimate facts. The corporation must be doing business in the foreign jurisdiction. Service of process must be had therein on an authorized agent. And, as it is only the doing of business of a particular character that meets the first requirement, it also presents a test for determining whether the business done in any particular case is of that character. It must be such as to justify the inference that the corporation is present therein.

It should be noted in this connection that the dualism called for is not in the way of its two ultimate facts interpenetrating. That they may do so appears, if we consider what it is that is meant by a corporation's doing business in a foreign jurisdiction. In order that it may be said that a corporation is doing business therein, it is necessary that action be taken therein, on its behalf, by an authorized agent. It is impossible for it to be said that a corporation is so doing, apart from such action. This is so because a corporation is an artificial person. Being so, it cannot, in a literal sense, do anything anywhere, and hence cannot in such sense do business at all, not only in a foreign jurisdiction, but also not in the domestic jurisdiction. It can only do, and hence only does, business through an authorized agent acting on its behalf. When it so does, it is in a figurative, and not in a literal, sense that it can be said that it so does. The maxim, "Qui facit per alienum facit per se," means no more than that, where one does something through another, it is the same as if he does it himself. He acquires the same rights and incurs the same liabilities. In the case of L. & N. R. R. Co. v. Bosworth (D. C.) 209 Fed. 380, 448, I took note of the fact that the provision of the Fourteenth Amendment that "no state shall" should be treated as if it read "no state officer or agent shall," because it is impossible in a literal sense for a state to act.

Such, then, being the case, it is possible for the requirement as to service of process to be met by service on such an agent; i. e., one through whom the corporation is doing business in the state of the requisite character. It is in such a case that the two ultimate facts required may be said to interpenetrate. If it can only be so met, then, in reality, there is no dualism in such cases. In that contingency that which is essential to jurisdiction can be put in this way. Service of process within the jurisdiction must be had on an agent through whose action therein the corporation is doing business therein of the requisite

character. In so putting it there is no dualism. The sole requirement is service of process on such an agent. But clearly such is not the thought of the statements quoted. On their surface, at least, they call for two separate and distinct and independent ultimate facts, to wit, the doing of business in the foreign jurisdiction of the requisite character and the service of process therein on an authorized agent. And, as we proceed, it will be found that the requirement as to service of process may be met by service on an agent either not acting at all on behalf of the corporation in such jurisdiction, or not so acting as to constitute the doing of business of the requisite character therein. It may be taken, therefore, that what the statements call for is a real dualism. According thereto, therefore, the defendant bank's position that the doing of business in this state of a particular character, at the time suit was brought, is essential to the state court's jurisdiction thereof, is sound. If, then, I am limited to these statements, there is nothing further to be done but to determine whether the action complained of herein was the doing of business of that character. Was it such as to justify the inference that the defendant bank was then present in this state?

This question is not an easy one. Indeed, I have found it so difficult that I have had to retrace my steps and call to my aid the methodic doubt. Do these statements truly represent the real position of the Supreme Court on the question here involved? This necessitates a consideration of all that that court has said or done which has a bearing thereon. Such a consideration should not be limited to abstract statements in its opinions. It should also take in the concrete things which it has decided. Indeed, the latter are of controlling consequence. Before proceeding further, therefore, with the case in hand, I purpose to present the result of such an adventure in interpretation.

1. The test prescribed in those statements for determining whether business done by a corporation in a foreign jurisdiction is of such a character as to meet the requirement of the first element of the dualism —i. e., whether it is such as to justify the inference that the corporation is present in the jurisdiction—cannot maintain itself against adequate criticism. That test itself calls for a test. When is the doing of business in the foreign jurisdiction such as to justify the inference that the corporation is present there and when is it not? Where is the line to be drawn? No such test has been prescribed. No such line has been drawn. Nor can the one be prescribed or the other drawn. That such is the case can be shown by several considerations. The attempt was made once to do so and it failed. In the case of International Harvester Co. v. Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479, it was said:

"We are satisfied that the presence of a corporation within a state necessary to service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state."

In short, presence is shown when it is manifested. Again, the test which has been prescribed for determining when the first element of the dualism is met has not always been adhered to. In the case of St.

Louis & S. R. R. Co. v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77, the matter was put thus:

"In a general way it may be said that the business must be such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in which it is served."

In the opinion in the case of People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537, both ways of putting it were combined. It was said:

"The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

Still further, the sentence in the opinion in the People's Tobacco Company Case, which immediately precedes the quotation just made therefrom, is as follows: "Each case depends upon its own facts." Substantially the same statement had been made thrice before, to wit, in the Alexander and Harvester Company Cases and in the case of Washington Ry. Co. v. Real Estate Trust Co., 238 U. S. 185, 35 Sup. Ct. 818, 59 L. Ed. 1262. This, if not a mere truism, forbids any attempt at generalization of the cases, involving the question we have here, for the purpose of arriving at a test for determining whether the business done is of such a character as to warrant an inference of presence. Indeed, it goes farther, and forbids such a generalization for the purpose of determining whether the business done is of such a character as to meet the requirement of the first element of the dualism. Yet the statement which follows this sentence just quoted attempts to set forth a test for so determining. This puzzled Judge Batts in the case of A., T. & S. F. R. R. Co. v. Weeks, 254 Fed. 513, 166 C. C. A. 71, where he said:

"In connection with this rule it is said: 'Each case depends upon its own facts.' When such a statement may be made a doubt arises as to whether that which is spoken of as a rule has been properly characterized."

Then, finally, the test prescribed is based upon two unsound presuppositions. One is that it is possible for a corporation to be present in a foreign jurisdiction. This is in the teeth of prior statements of the Supreme Court. In the case of Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274, it was said:

"A corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law and by force of the law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation and cannot migrate to another sovereignty."

In the case of Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451, it was said:

"This corporation, existing only by virtue of the law of Indiana, cannot be deemed to pass personally beyond the limits of that state."

And in the case of Shaw v. Quincy Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768, after quoting the above extract from Bank of Augusta v. Earle, it was said:

"This statement has been often reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home, the domicile, the habitat, the residence, the citizenship of the corporation can only be in the state by which it was created, although it may do business in other states whose laws permit it."

The idea that a corporation has existence only in the state of its creation, cannot migrate therefrom, or pass personally beyond its limits, and the idea that it may be present in another state are contradictories. Both cannot be true. One or the other must be wrong.

The other is that it is essential to jurisdiction to establish a personal liability against a corporation in a foreign jurisdiction that it be present in such jurisdiction. Such is not the case. In the Augusta Bank Case the position that a corporation has no existence outside of the state -of its creation and cannot migrate therefrom—i. e., that it cannot be present in a foreign jurisdiction—was relied on to defeat the right of the Georgia Bank to recover on the bill of exchange in suit which had been purchased by its agent in Alabama acting there on its behalf. This position was answered by the court in its opinion thus:

"Now, natural persons, through the intervention of agents, are continually making contracts in countries in which they do not reside, and where they are not personally present when the contract is made; and nobody has ever doubted the validity of these agreements. And what greater objection can there be to the capacity of an artificial person, by its agents, to make a contract, within the scope of its limited powers, in a sovereignty in which it does not reside, provided such contracts are permitted to be made by them by the law of the place? The corporation must, no doubt, show that the law of its creation gave it authority to make such contracts, through such agents. Yet, as in the case of a natural person, it is not necessary that it should actually exist in the sovereignty in which the contract is made. It is sufficient that its existence as an artificial person, in the state of its creation, is acknowledged and recognized by the law of the nation where the dealing takes place, and that it is permitted, by the laws of that place, to exercise there the powers with which it is endowed."

So in the French Case the fact that the Indiana corporation could not pass personally beyond the limits of that state, and hence could not be present in Ohio, where it was sued, was relied on to defeat the suit. In answer to this position it was said:

"But it does not necessarily follow that a valid judgment could be recovered against it only in that state. A corporation may sue in a foreign state, by its attorney there, and, if it fails in the suit, be subject to a judgment for costs. And so if a corporation, though in Indiana, should appoint an attorney to appear, in an action brought in Ohio, and the attorney should appear, the court would have jurisdiction to render a judgment in all respects as obligatory as if the defendant were within the state. The inquiry is, not whether the defendant was personally within the state, but whether he, or some one authorized to act for him in reference to the suit, had notice and appeared, or, if he did not appear, whether he was bound to appear or suffer judgment by default."

2. Likewise the dualism itself cannot so maintain itself. The fact that the test prescribed for determining whether the business done measures up to the requirement of its first element, on consideration thereof, fails us, affects its value. What possible reason, then, is there for such a requirement? Why should it be that the fact that the

corporation is doing business in the foreign jurisdiction, at the time suit is brought, is essential to jurisdiction in a case where there has been service of process on an authorized agent?  Two possible reasons therefor suggest themselves.  One is that, in order to jurisdiction, it is essential that the corporation shall have consented to be sued in the foreign jurisdiction, and its doing business therein evidences such consent.  But the decision in the case of Barrow S. S. Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964, negatives the idea that consent to being sued is essential to jurisdiction.  The other is that, in order to jurisdiction, it is essential that the corporation be present in the foreign jurisdiction, and the doing of business therein evidences presence.  But, as we have seen, the decision in the French Case negatives this idea, and the statements quoted from the opinions in the Augusta Bank, French, and Shaw Cases negative the idea that it is possible for a corporation to be present in a foreign jurisdiction.  These are the only possible reasons occurring to me for the requirement.  No other reason therefor is suggested in any of the opinions of the Supreme Court.  It would seem to follow that, if there is no conceivable good reason therefor, the requirement is purely artificial, without value, and should not be put forth.

But this is not all that is to be said against this requirement and the dualism of which it is a part.  It and that dualism originated in a case where there was no doing of business of the requisite character, and yet jurisdiction was upheld; process having been served on an authorized agent.  This, if true, makes this case a direct authority against the dualism which it for the first time put forth.  This seems startling, but I think it can be made good, an attempt to do which will be shortly made.  This presents for consideration the question as to the origin of the dualism, and at the same time of the test prescribed for its first element.  Questions of origin are always attractive to the modern mind, and, though origin and value are different conceptions, it is possible that the origin of an idea may affect its value.  Beyond question the dualism originated in the case of Conn. Mut. Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569.  The only preceding cases in which it could have originated were the following: Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451; B. & O. R. R. Co. v. Harris, 12 Wall. 65, 20 L. Ed. 354; St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Goldey v. Morning News, 156 U. S. 519, 15 Sup. Ct. 559, 39 L. Ed. 517; Barrow S. S. Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964.  But it did not originate in either one of these.  I append hereto an analysis of each of these cases to make sure of this.  The Cox and Goldey Cases are substantially similar, and they are dealt with together.  These several appendices are designated by the letters A, B, C, and D.  There is more room for claiming that the dualism originated in the Cox Case than in any of the others.  Hence it is dealt with more fully.  In that case much was made of the question as to whether the defendant corporation was doing business in the state at the time suit was brought.  But it was not considered to be an element essential to jurisdiction along with the question as to whether process had been served on an authorized agent.

It was merely considered in subordination to that question. The question as to whether process had been served on an authorized agent depended on whether at the time the suit was brought the corporation was doing business in the state. It was in the Spratley Case that the question whether the defendant corporation was doing business in the state at the time suit was brought was elevated to a position of equal rank with the question whether process had been served on an authorized agent. Hence it was in that case that the dualism originated. Appendix E contains an analysis thereof. In that case service of process on the adjuster of the defendant corporation was not thought to be sufficient to give the court jurisdiction. It was essential also that the corporation was doing business in the state at the time the suit was brought of a particular character. And what the adjuster was then doing was not thought to be of that character. Something more was thought to be essential, and that something more was found in the fact that the defendant corporation was collecting premiums on old policies issued before it withdrew from the state.

This dualism, having thus originated, pervades all the subsequent cases. Its first formal expression was in the Peterson Case in that portion of the opinion heretofore quoted. After the Spratley Case, and before this formal expression in the Peterson Case, the essentials of jurisdiction were presented in the same way as in the Spratley Case in the cases of Mutual Reserve Life Ins. Co. v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987; Pa. Lumbermen's Ins. Co. v. Meyer, 197 U. S. 407, 25 Sup. Ct. 483, 49 L. Ed. 810. Appendices F and G contain analyses of these two cases. In the Phelps Case the requirement as to service of process on an authorized agent was held to be met by service on the insurance commissioner of the state. That, as to doing business in the state, was held to be met in the same way as in the Spratley Case—i. e., by the collection of dues, premiums, and assessments from the policy holders by the insurance company.

In the Meyer Case the requirement as to service of process on an authorized agent was held to be met by service of process on a director of the corporation residing in the state, but who did nothing on its behalf therein. The other requirement was held to be met by the fact that the corporation's adjusters came into the state to investigate and settle losses.

I have heretofore stated that in the case where the dualism originated, which we have found to be the Spratley Case, there was no doing business of the requisite character and yet jurisdiction was upheld, process having been served on an authorized agent. This, if true, as stated, makes that case a direct authority against the dualism. .It shows that the doing of business of the requisite character in the foreign jurisdiction is not essential to jurisdiction. The upholding of jurisdiction must be based upon some other ground. I must now attempt to make this good. That which was held to be the doing of business of the requisite character at the time the suit was brought was the collection by the corporation of premiums on old policies issued before it withdrew from Tennessee. What the adjuster was then doing was not looked upon as of the requisite character. But I would

submit that the collection of such premiums by its agent was not the doing of business by it in Tennessee, much less business of the requisite character. It was not, because in such collection there was no doing on its part in the state of Tennessee. All the doing in that connection in that state was by the policy holders in remitting the premiums. The doing on the part of the corporation—i. e., sending notices of the maturity of the premiums and receipt thereof—took place, not in Tennessee, but at Louisville, Ky., where the corporation's agent who was attending to the collecting was located. The Phelps Case, where jurisdiction was upheld, was exactly like the Spratley Case in this particular, and, if I am right, is also a direct authority against the dualism. The decision in the Meyer Case would seem to be against the position that the collection of premiums by an agent of an insurance corporation located outside of the state constitutes doing business by the corporation in the state. There the applications for policies were sent from New York to Philadelphia, and the policies from Philadelphia to different points in that state by mail; and no doubt premiums on policies were remitted as they become due to defendant at Philadelphia in like manner. Yet this was not regarded as sufficient to meet the requirement that the defendant should be doing business in New York when suit was brought. What was relied on as meeting that requirement was the presence and action in New York on defendant's part, as occasion demanded, of an adjuster in the matter of settling losses. If, then, I have made no mistake, both the Spratley and the Phelps Cases are, as stated, direct authorities against the dualism, in that jurisdiction was upheld, notwithstanding there was no doing of business in the state where suit was brought, at the time it was brought, of the requisite character. In the Phelps Case there was no doing of business of any character. It does not follow from this that those cases were wrongly decided. It only follows that to uphold them basis of jurisdiction other than the dualism in question must be found in them. And, as will later appear, they do yield such a basis, and they certainly were rightly decided.

How, then, as to the origin of the test prescribed in the first element of the dualism? Beyond question it originated in the Green Case. The only preceding cases in which it can be claimed that it originated are the Harris Case and the case of Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853. But it did not originate in either one of them. The facts in the Harris Case have heretofore been largely presented. The statutes defining the jurisdiction of the court of the District of Columbia provided that no action or suit by any original process against any person who shall not be an inhabitant of or found within the District of Columbia at the time of serving the writ can be brought. A plea in abatement was filed on the ground that the defendant corporation, a Maryland corporation, was not an inhabitant of the District or found therein when process was served. The plea has held bad, not, however, because the defendant was an inhabitant of and found in the District, but because the venue provision had in effect been repealed as to it by the statute rendering it liable to suit in the District. An analysis of the Schollenberger Case is to be found in Appendix H.

The way the test prescribed for the first element of the dualism came about would seem to have been that the adoption of the dualism in the Spratley, Phelps, Meyer, and Peterson Cases necessitated a test of that element; and that prescribed naturally suggested itself as the true one.

3. This destructive criticism paves the way for constructive work. It brings me to a third step, to wit, a thinking together of the concrete things decided by the Supreme Court, in the cases which have come before it, involving this question of jurisdiction which we have here, to see if they will not yield a synthesis which will include them all. Are all such decisions consistent, and, if so, what is the synthesis which they yield?

The cases to be considered are 25 in number and they are the following, to wit: Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451; B. & O. R. R. Co. v. Harris, 12 Wall. 65, 20 L. Ed. 354; St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Goldey v. Morning News, 156 U. S. 519, 15 Sup. Ct. 559, 39 L. Ed. 517; Barrow S. S. Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964; Conn. Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Mutual Reserve Fund Life Ins. Co. v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987; Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113; Pa. Lumbermen's Ins. Co. v. Meyer, 197 U. S. 407, 25 Sup. Ct. 483, 49 L. Ed. 810; Kendall v. Automatic Loom Co., 198 U. S. 477, 25 Sup. Ct. 768, 49 L. Ed. 1133; Old Wayne Mut. Life Ins. Co. v. McDonough, 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345; Peterson v. C., R. I. & P. R. R. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841; Green v. C., B. & Q. R. R. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916; Commercial Acc. Ins. Co. v. Davis, 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 782; Hunter v. Mutual Life Ins. Co., 218 U. S. 573, 31 Sup. Ct. 127, 54 L. Ed. 1155, 30 L. R. A. (N. S.) 686; St. L. S. W. R. R. Co. v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; International Harvester Co. v. Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479; Simon v. So. Ry. Co., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492; Riverside & Dan River Mills v. Menefee, 237 U. S. 189, 35 Sup. Ct. 579, 59 L. Ed. 910; Wash.-Va. Ry. Co. v. Real Estate Trust Co., 238 U. S. 185, 35 Sup. Ct. 818, 59 L. Ed. 1262; Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co., 243 U. S. 93, 37 Sup. Ct. 344, 61 L. Ed. 610; P. & R. Ry. Co. v. McKibben, 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710; Toledo Rail & Light Co. v. Hill, 244 U. S. 49, 37 Sup. Ct. 591, 61 L. Ed. 982; Meisukas v. Greenough Red Ash Coal Co., 244 U. S. 54, 37 Sup. Ct. 593, 61 L. Ed. 987; People's Tobacco Co. v. American Tob. Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537.

Most of these cases have already been referred to in one way or another. The consideration thereof now will be limited to the things concretely decided by them for the purpose of giving an answer to the question put. I have found that they are consistent and yield a synthesis, and my course of procedure is not to state, first, the concrete things decided in each case, but the synthesis which they yield, and then

indicate the contribution which they severally make to it. That synthesis is that there is a single fundamental principle at the bottom of each one of these cases which necessitated the decision made. That principle is this. The existence of jurisdiction in a case of this kind depends upon whether, in view of the ultimate facts thereof, the exercise of jurisdiction would be reasonable. If its exercise would be reasonable, jurisdiction exists. If, on the other hand, it would not, jurisdiction does not exist. This could not be otherwise, in view of the Fifth and Fourteenth Amendments to the federal Constitution. The Fourteenth Amendment prohibits a state—i. e., an officer or agent of a state—from depriving a person, natural or artificial, of his property without due process of law. The Fifth Amendment prohibits a federal officer or agent from doing likewise. The establishment of a personal liability against a person by a court of justice deprives him or it potentially of his or its property. Such a deprivation is within these amendments. Each amendment, therefore, within its sphere, prohibits a court from establishing a liability against a foreign corporation without due process of law. Riverside & Dan River Mills v. Menefee, supra.

In the case of Dent v. West Virginia, 129 U. S. 124, 9 Sup. Ct. 231, 32 L. Ed. 623, the Supreme Court said that "the great purpose" of the Fourteenth Amendment, as to its due process clause, was to "exclude everything that is arbitrary or capricious." Such is to be taken to have been the purpose of the Fifth Amendment, also. It follows that, where the exercise of such jurisdiction would be arbitrary or capricious, it is prohibited and does not exist. It is only where its exercise would be reasonable that it can or does exist. If, then, there is such a single fundamental principle, applicable to and determinative of all such cases, one confronted with one of them and free to exercise his own judgment in the matter should dispose of the question of jurisdiction in the light of that principle. There is, therefore, implicit in each of these cases, on the basis on which I am proceeding—i. e., that they were decided correctly—that the decision therein was the result of a combination of this fundamental principle with the ultimate facts thereof. This being so, each should yield a living rule—i. e., a rule embodying such principle—which is applicable to and determinative of all similar and analogous cases. It is only in the event that a case is not covered by one of these concrete decisions or by a living rule deducible from them that there will be occasion to apply the fundamental principle to the ultimate facts of such case in disposing of it.

I gather from these cases not only this fundamental principle, but one absolute living rule—i. e., a rule embodying this principle that is without exception—applicable to all such cases, and which, of itself, may be determinative of the question of jurisdiction. That rule is that a court is without jurisdiction to establish liability against a foreign corporation without reasonable notice given to it. It is a particularization of the universal rule that no person should be condemned without such notice. In the French Case it is said that it is a "principle of natural justice" which requires "a person to have notice of a suit before he can be conclusively bound by its result." What is

meant by this rule is that, in order to such jurisdiction, such notice shall be given to the proper agent of the corporation. For it cannot otherwise receive notice. The rule goes further than this. The agent on whom service has been had must, at the time of service of process, be within the territorial jurisdiction of the court. The decisions in 10 of those cases may be said to have been based on this rule. Because of it jurisdiction was denied in each one of them. They are the following, to wit: St. Clair v. Cox; Goldey v. Morning News; Conley v. Mathieson Alkali Works; Kendall v. Automatic Loom Co.; Peterson v. C., R. I. & P. R. R. Co.; Riverside & Dan River Mills v. Menefee; Philadelphia & Reading R. R. Co. v. McKibben; Toledo Rail & Light Co. v. Hill; Meisukas v. Greenough Red Ash Coal Co.; People's Tobacco Co. v. American Tobacco Co.

The Tobacco Company Case differs from the rest in that the person on whom process had been served was not then the agent of the defendant corporation. In the other 9 he was such agent, but he was not its representative in the jurisdiction where the suit was brought. In the Cox, Goldey, Peterson, McKibben, and Meisukas Cases the agent was temporarily in such jurisdiction; whereas in the Conley, Kendall, and Hill Cases he was a permanent resident thereof. But in none of them was he acting therein on behalf of the corporation by its authority. If one were limited to these decisions, he might think that in no case could an agent in the foreign jurisdiction be the representative of the corporation therein so as to be authorized to receive service of process unless he was acting therein on its behalf by its authority. But such a view of the matter has to reckon with the decision in the Meyer Case, where jurisdiction was held to exist. There process had been served on a director, permanently residing in the jurisdiction where suit was brought, but he was not acting therein on behalf of the corporation in any particular. The decision has to be accounted for on one or the other of two grounds. One is that the corporation had consented that service of process on him should be sufficient as a condition of its being permitted to do business therein to the extent which it did, or it is possible for jurisdiction to be acquired, so far as service of process is concerned, by service on an agent then in the jurisdiction, but not acting for it in any particular, it being essential only that service shall be had on the agent, who, it is reasonable to believe, will convey notice of the suit to the corporation. No other ground of accounting for it occurs to me.

The other 15 cases go further than what is to be gathered from these 10. I gather from them that the fundamental principle that, in order to jurisdiction, it must be reasonable for it to be exercised, is not exhausted by the absolute living rule to which I have just referred. It must be reasonable for the corporation to be sued in the foreign jurisdiction. The requirement of that rule may be fully met and yet jurisdiction not exist if it is arbitrary and not reasonable for the corporation to be subject to suit in such jurisdiction. The plaintiff's sic volo is not sufficient of itself to confer jurisdiction. The corporation must be suable there. There is therefore a dualism—a real dualism—in all such cases. But it is not the dualism heretofore considered. It

is this: The corporation must be suable in the foreign jurisdiction; i. e., it must be reasonable and not arbitrary for it to be sued therein, and process must have been served therein on an authorized agent. I gather further from those 15 cases certain living rules which are the result of the combination of that fundamental principle with the ultimate facts thereof. I purpose now to establish these two positions: These 15 cases may be divided into two classes—those in which jurisdiction was denied and those in which it was upheld. Four of them belong to the former class. They are the following, to wit: Old Wayne Mutual Life Ins. Co. v. McDonough; Green v. C., B. & Q. R. R. Co.; Hunter v. Mutual Life Insurance Co.; Simon v. Southern Ry. Co. Eleven of them belong in the latter class. They are the following, to wit: Lafayette Ins. Co. v. French; B. & O. R. R. Co. v. Harris; Barrow S. S. Co. v. Kane; Conn. Mutual Life Ins. Co. v. Spratley; Mutual Reserve Life Ins. Co. v. Phelps; Pa. Lumbermen's Ins. Co. v. Meyer; Commercial Accident Ins. Co. v. Davis; St. L. & S. W. R. R. Co. v. Alexander; International Harvester Co. v. Kentucky; Wash.-Va. R. R. Co. v. Real Estate Trust Co.; Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.

I begin with the first class and pick out, as a starter, the Green Case. In the Harvester Company Case that case is said to be an "extreme case." It is indeed such under the dualism I have questioned. I have heretofore set forth the facts of that case, but I must again go into them somewhat in this connection. The defendant was an Iowa corporation. It was a transportation corporation. It was a particular kind of such a corporation. It transported passengers and freight over a line of railroad extending through a number of states. Its eastern terminus was in Illinois at Chicago. Its railroad, in its course, passed through Colorado. The cause of action asserted was in tort. It was to recover damages for a personal injury incurred in Colorado by defendant's negligence. The plaintiff's relation to the defendant at the time of the injury—i. e., whether he was a passenger, employee, highway traveler, or trespasser—is not stated. He was a citizen of Pennsylvania, where the suit was brought. It is hardly open to claim that service on defendant's district freight and passenger agent was not sufficient to bring the defendant before the court if it was suable at all in Pennsylvania. The only possible basis for claiming want of jurisdiction was that the defendant was not suable in Pennsylvania. Now it seems to me that it was not reasonable for the defendant to be subject to suit on that cause of action in Pennsylvania. It smacked at least of the arbitrary and capricious for it to be suable there. Probably it was more convenient for the plaintiff to sue there than anywhere else. Possibly by suing there he gained undue advantage over the defendant by reason of local influence. Most likely the relation between them out of which the injury arose was of his, and not of defendant's, seeking. It was a great hardship to defendant to have to defend the suit in Pennsylvania. Its witnesses were most likely its employees. What plaintiff was going to testify to would not be known until he took the witness stand. This would necessitate the presence of defendant's witnesses at the trial. Besides, defendant might desire that

they should testify in open court rather than by deposition. In order to properly defend the case defendant therefore would not only have to take such witnesses off their jobs, but to bring them several thousand miles away from them. Developments at the trial might call for witnesses, not theretofore known to be needed, and they would not be readily accessible. Reasons against the maintainability of such a suit in a foreign jurisdiction, not that in which the cause of action arose, are thus set forth by Judge Batts in the case of A., T. & S. F. R. R. Co. v. Weeks, supra:

"As applicable to railroad corporations, the recognition of a right to sue for damages for injuries in any place other than in the state of the injury is a very questionable policy. While the rule may be justified as to an individual on account of the ease with which the right to recover might be defeated, no such reason exists as to a railroad, where residence and business are permanently localized. Manifestly there are many advantages in trying such a case where the cause of action arises. The law of the cause of action is the law of the place. It may be assumed that the courts of the state can more satisfactorily administer the laws of the state than can the courts of any other state. The expense incident to a trial would usually be materially less at the place of the tort than elsewhere. The imposition upon a state of the expense of maintaining courts to try causes in which the state has no interest would be difficult to justify. The maintenance of the judicial machinery involves no light burden. Many of the states, including Texas, have been made to provide adequate machinery. No good reason could probably be made to appear why her overworked courts should be compelled to carry any part of the burden of other states. Considerations of this character are manifestly more for the legislative than the judicial department, but they cannot be entirely ignored when the weight of two opinions are so nearly equal."

In the Green Case, therefore, the tort for which suit was brought had no connection with the jurisdiction in which the suit was brought. It was entirely foreign thereto. It was a suit against a corporation in a foreign jurisdiction on a cause of action for a foreign tort. The following living rule may be drawn from this decision, to wit: That a corporation cannot be sued in a foreign jurisdiction on a cause of action for a foreign tort. The decisions in the Peterson, Menefee, McKibben, and Meisukas Cases, in each of which jurisdiction was denied for want of service of process on on authorized agent, could have been based on this rule as well as on that ground. The suit in the Peterson Case was brought in Texas against an Illinois railroad corporation, no part of whose line was located in Texas, for the negligent killing of an engineer in its employ in Indian Territory, through which its line ran. The suit in the Menefee Case was brought in North Carolina against a Virginia manufacturing corporation, whose factory was in that state, by an employee to recover damages for a personal injury received whilst working there. The suit in the McKibben Case was brought in New York against a Pennsylvania railroad corporation, no part of whose line was located in New York, by a brakeman in its employ, to recover damages for a personal injury received whilst working on its line in New Jersey. And the suit in the Meisukas Case was brought in New York against a Pennsylvania coal mining corporation whose mines were in that state by a miner in its employ to recover damages for a personal injury received whilst working in its mines.

But it would seem that the living rule to be drawn from the Green Case has been put too narrowly. It should be broadened so as to cover a cause of action for breach of a foreign contract. This is implicit in the decision, because there is no possible reason for distinguishing between a cause of action for a foreign tort and one for breach of a foreign contract, in this particular. If a corporation is not suable in a foreign jurisdiction on a cause of action for a foreign tort, it should not be suable on a cause of action for breach of a foreign contract. There are several ways in which a contract may have relation to a particular jurisdiction. It may be made in it, or it may be to be performed in it or it may have to do with property or persons in it. In thus broadening the living rule thus drawn, I limit it for the time being to causes of action for breaches of contract that are entirely foreign to the jurisdiction in which the suit was brought—i. e., have no relation thereto in either one of these ways. The rule so drawn, however, should be put as a general, and not as an absolute, rule—i. e., without exception. This is because, when we come to consider the 11 decisions in which jurisdiction was upheld, exceptions thereto will be found. If, then, I am right in my view of this decision, it is not "an extreme case." It is instinct with living reality. Diving deep in it, one finds that "the deeps unlock the depths and sunken gold of being alive." The rule which I have thus drawn from the Green Case finds support, to a certain extent at least, from the decisions in the McDonough, and Simon Case, and also from that in the Hunter Case, in each of which jurisdiction was denied. There is, however, that in them which may be said to detract from their support thereof. It is that in neither instance was service of process had on an agent of the corporation, as in the Green Case, but on a state official under a statute which it was claimed authorized it. This renders it possible to ground the denial of jurisdiction on the fact that the service was not had on a representative of the corporation in the jurisdiction, and not on the fact that it was not suable therein, though it is possible that it was because of a revulsion against the thought of the corporation being subject to suit in the foreign jurisdiction on a foreign cause of action that it was held that the state official on whom process had been served was not the representative of the corporation. An analysis of each of these three cases is appended hereto. The McDonough and Simon Cases are treated together. See Appendices I and J.

This brings me to the 11 decisions in the cases in which jurisdiction was upheld. In upholding jurisdiction it must be taken that the court decided not only that the requirement as to service of process was met, but that the defendant was suable in the jurisdiction in which suit was brought; i. e., that it was reasonable, and not arbitrary, that it be subject to suit therein, in view of the ultimate facts thereof. And from these decisions living rules can be drawn for guidance in all similar and analogous cases in determining the suability of a corporation in a foreign jurisdiction. I begin with the decisions in the cases in which the cause of action was in tort, to relate them to the decision in the Green Case, with which I began the consideration of the decision in which jurisdiction was denied. They are those in the Harris and Kane

Cases. The other nine were upon causes of action in contract. Of these two I take the Kane Case first. That case is like the Green Case in that the defendant was a transportation corporation. It was a steamship corporation. Its line extended from some port in Great Britain to the port of New York. The suit was brought in that city, the western terminus of its line of transportation. There is nothing in the decision in the Green Case against the suability of a transportation corporation in a foreign jurisdiction through which its line runs or in which it terminates on a foreign cause of action, and hence of the suability of the defendant in this case in New York. And clearly it was reasonable, and not arbitrary, that it should be subject to suit there on the cause of action asserted therein. It would have been a great inconvenience to plaintiff to have had to cross the ocean to assert his claim. He was bound for the port of New York when assaulted in the port of Londonderry, Ireland. And, no doubt, it was just as convenient to defendant to meet the case in New York as across the ocean. As to the Harris Case but little is to be said. There jurisdiction of the suit against the Maryland railroad corporation in the District of Columbia to recover damages for the personal injury received in Virginia was based on the statute. Had there been no such statute, the venue clause of the jurisdictional statute would have been in the way of the existence of jurisdiction in the absence of waiver. But, with that out of the way, as defendant's line ran through the District of Columbia, it would seem that jurisdiction would have existed.

Probably, therefore, this living rule is to be drawn from the decision in the Kane Case, if not from that in the Harris Case, that a transportation corporation is suable in a foreign jurisdiction on a foreign cause of action in contract as well as in tort, if such foreign jurisdiction is one through which its line runs or in which it terminates. If so, we have here an exception to the living rule drawn from the Green Case that a corporation is not suable in a foreign jurisdiction on a cause of action entirely foreign thereto.

This brings me to the decisions in which the suits were upon causes of action in contract. In three of them, to wit, the French, Phelps, and Gold Issue Mining & Milling Co., the decision that jurisdiction existed was based on the consent or agreement of the defendant. Jurisdiction of a foreign corporation always exists on the ground that there has been a voluntary appearance of the defendant to the suit. It so exists whatever may be the nature of the cause of action and however foreign it may be to that jurisdiction, just as it so exists as to a nonresident natural person. The consent or agreement in those three cases was not given in this way. It was given in advance of suit.

In consenting or agreeing that process might be served on the person on whom it was served the defendant had consented and agreed that it might be sued in that jurisdiction. The defendant in each of these three cases was an insurance corporation—in the French and Gold Issue Mining & Milling Co. Cases a fire, and in the Phelps Case a life, insurance corporation. In the French Case the consent or agreement was an implied one. It was implied from the fact of doing business in the state, the statutes thereof providing for suit against it, and service had

been had on the defendant's local agent, through whom the contract of insurance had been made. In the Phelps and Gold Issue Mining & Milling Co. Cases the consent or agreement was express, given by filing an agreement pursuant to statute consenting to service of process on the insurance commissioner. Service was had in each instance on the insurance commissioner; in the Phelps Case after defendant had withdrawn from the jurisdiction. The contract of insurance in the French and Phelps Cases was made with a citizen of the foreign jurisdiction in which suit was brought. That in the one case covered property and that in the other was on the life of a person therein. Except, therefore, in the particular as to the corporation by whom the contract was made the contract of insurance was not foreign to the jurisdiction in which it was sued on. In the Gold Issue Mining & Milling Co. Case, the contract was entirely—i. e. in every particular—foreign to the jurisdiction in which suit was brought. The defendant was an Arizona corporation. The policy of insurance was issued in Colorado to a citizen thereof on property therein. The suit was brought in Missouri. The Supreme Court thereof had construed the statute with which defendant had complied and under which it had entered the state as broad enough to cover policies of insurance entirely foreign to that state. The statute, as thus construed, was held to be valid, and this construction was held to be binding on the federal courts. It was on this ground distinguished from the McDonough and Simon Cases, in neither of which had their been an express consent or agreement. It would seem that the defendant therein had not withdrawn from the state. As the statute provided for suit after withdrawal, it is not unlikely that it would have made no difference in the decision if in fact it had withdrawn before suit. No note was taken of the fact that the defendant was then doing business in the state. What, then, is to be drawn from these three decisions? It is important to bring out what is not to be drawn from the French and Phelps Cases, and this is all that need be said as to the decision in the French Case. It is not to be drawn from them that consent or agreement is essential to the suability of a foreign corporation in a foreign jurisdiction. Because it so happened in each case that there was consent or agreement that the corporation might be sued in the jurisdiction in which suit was brought, so that the holding that jurisdiction existed could be based on such consent or agreement, it does not follow that defendant would not have been suable therein had there been no consent or agreement. Of course, in the Phelps Case jurisdiction would not have existed in the absence of the agreement therein because there service of process was not had on a voluntary agent of the defendant, but on the insurance commissioner. Service of process on him would not have been good in the absence of defendant's agreement that process might be served on him. But it is not to be drawn therefrom, any more than from the decision of the French Case, that consent or agreement was essential to the suability of defendant in the jurisdiction where it was sued. It was essential only to the validity of the service of process on the insurance commissioner. As, for instance, the decisions in those two cases are not against the existence of jurisdiction if service of process had been had therein on an authorized agent, who

was not such on the basis of consent, service being had, for instance, on an adjuster sent into the jurisdiction to settle the loss accruing on another policy, as happened in the Spratley Case, on the ground that the transaction was entirely domestic. It was made with a citizen of the jurisdiction in which suit was brought. It covered, in the French Case, property located therein; in the Phelps Case, the life of a person, a citizen thereof. And it was made and to be performed therein. Those decisions are not against the position that the existence of such facts rendered the exercise of jurisdiction reasonable, and not arbitrary, and, this being so, and service of process being had on such an authorized agent, jurisdiction existed.

So far as the decision in the Phelps Case is concerned, I have heretofore taken position that it is a direct authority against the dualism, which has the doing of business of a particular character in the foreign jurisdiction at the time suit is brought as one of its elements. This is so because when the suit was brought the defendant was not doing business in the jurisdiction where it was brought in the only sense in which it is possible to say that it was doing business therein. It had withdrawn from the state, and then had no agent therein acting on its behalf. The receipt outside of the state of premiums on policies issued before the withdrawal sent to it by the holders thereof then within it was not the doing of business by the defendant in the state. In so doing there was no doing by it within the state, and hence no doing of business therein. It is further against it that it is inconceivable that jurisdiction would not have existed even though there had been no receipt of premiums. The policy in suit was issued in Kentucky on a resident thereof. The defendant had secured admission into Kentucky and was enabled to obtain the policy in suit upon its express agreement that it might be sued thereon in Kentucky, and that service of process on the insurance commissioner would be sufficient. This agreement may be said to have been a term in the policy. In the Hunter Case it is said:

"It had done business in the state and the former act [i. e., of the Legislature of North Carolina] became a part of its obligations to its policy holders."

Suppose the policy in suit had been the only policy issued in Kentucky between the granting of the permit and its cancellation, and that the right of action on the policy had matured after the payment of the initial premium, and before the maturing and payment of any others, in which case it would not have been open to claim that the corporation was doing business in Kentucky on the basis stated; would not jurisdiction of the suit have been upheld? To deny jurisdiction in such a case would be to refuse to make the corporation stand up to its agreement. This living rule, therefore, is to be drawn from the decision in the Phelps Case: If a corporation enters a foreign jurisdiction and contracts therein with one of its citizens pursuant to a permit of such jurisdiction conditioned that it is to be subject to suit therein on such contracts as it makes, and that service of process may be had on a designated state official, it is suable therein on such a contract, and service of process on the state official will be sufficient.

The thing to be emphasized in the Gold Issue Mining & Milling Co.

Case is that it yields another exception to the general living rule drawn from the decision in the Green Case, to wit, that a corporation is not suable in a foreign jurisdiction on a cause of action entirely foreign to it; the exception being that it is suable therein on such a cause of action if, as a condition to being permitted to enter such jurisdiction and do business therein, it agrees that it may be sued therein thereon.

Three others of these nine decisions should be considered together. They are those in the Spratley, Meyer, and Davis Cases. Each was an action on an insurance policy—that in the Spratley Case, life; in the Meyer Case, fire; and in the Davis Case, accident—against a foreign insurance corporation. In my analyses of the Spratley and Meyer Cases I have noted that possibly jurisdiction might have been based on the ground of implied consent the same as in the French Case. Possibly that in the Davis Case could have been so based also. But jurisdiction in neither one of them was in fact so based. In each instance jurisdiction was based on the dualism of the Supreme Court. I propose to deal with them on the assumption that jurisdiction could not have been based on consent or agreement, and that it must be based either on such dualism or on some other ground. I have heretofore taken the position that the decision in the Spratley Case as well as that in the Phelps Case instead of justifying that dualism is against it. It had no agent other than the adjuster on whom process was served acting therein on its behalf and had not so had since 1894, when it withdrew from the state. The action of the adjuster only qualified him to receive service of process. It did not amount to the required doing of business in the view of the court. The receipt by it outside of the jurisdiction of premiums on policies issued before its withdrawal sent to it through the mails by the holders thereof was not the doing of business by it within the state. There was no doing by it in the state, and hence there was no doing of business. The court having upheld jurisdiction where there was no doing of business in the jurisdiction where the suit was brought, the effect of its decision was that the doing of business therein was not essential to jurisdiction, and hence its decision is against the dualism in question. On what ground then should the decision be based? The contract of insurance on which the suit was brought had been issued before the withdrawal of the corporation from the state. It had been issued in the state on the life of a citizen thereof and was to be performed therein. It was entirely a domestic transaction. Why then should not the defendant have been suable thereon in that jurisdiction? It was reasonable and not arbitrary that it should be subject to suit therein. But its suability therein was not sufficient to give jurisdiction. It was necessary that service of process be had on an authorized agent. That requirement was met by the service on the adjuster sent into the state to settle the loss. It seems to me that this decision can and should be based on this ground. Furthermore, it is the only ground on which it can be based. I therefore draw from it this living rule applicable to all similar and analogous cases, that a corporation is suable in a foreign jurisdiction on a cause of action growing out of an entirely domestic transaction, and, if service of process is had therein on an authorized agent, jurisdiction exists.

If a jurisdiction is good enough for a foreign corporation to enter for the purpose of doing business therein, then it is good enough for it to be sued therein on a cause of action growing out of a transaction had by it whilst it is in such jurisdiction. This being so, it is unimportant in such cases that the transaction out of which the cause of action arose may be the only transaction which the corporation has had in the jurisdiction. The reasonableness of its suability therein rests solely on the domesticity of the transaction out of which the cause of action arose. The reasonableness thereof is not affected by the absence or presence of other such transactions.

The Meyer Case differed from the Spratley Case only in the extent of the domesticity of the transaction. There the contract of insurance was not made in the jurisdiction where suit was brought. It was made at the home office of the defendant outside of that jurisdiction. But it was made with a citizen thereof, who was reached by the use of the mails. It covered property therein, and was to be performed therein. Why, then, should the mere fact that the contract was made outside of the jurisdiction make any difference between the decision of that case and the decision of the Spratley Case? Notwithstanding this difference, it was still reasonable, and not arbitrary, that the defendant should be subject to suit in the jurisdiction where the suit was brought. Defendant had entered that jurisdiction, not by sending its agent therein, but by the use of the mails. By means thereof it had sought out the plaintiff and entered into a contract relation with him as to property therein, which contract it had agreed to perform therein. Why did it make any difference whether defendant had entered into other such contracts or this was the only one? Would it not have been unreasonable, if service of process had been had on an authorized agent, to hold that jurisdiction to determine liability did not exist? It seems to me that there is no escaping the position that it would.

No special notice need be taken of the Davis Case. There is nothing in it contrary to what I have drawn from the Spratley and Meyer Cases. So far as it has bearing, it is confirmatory thereof.

This still leaves three decisions to be considered. Of these I would take first the Harvester Company Case. There the defendant corporation entered the jurisdiction in which it was indicted. It did so by sending its agents therein. The agents which it so sent did not have as full authority as those in the Spratley Case. They were authorized to solicit orders for defendant's machine and forward them to it. The orders were accepted outside of the jurisdiction, and performance of the contracts of sale, created by the acceptance of the orders, was made outside thereof by delivery to the purchasers f. o. b. cars at place of shipment. But they were so delivered in order that they might be transported into the jurisdiction where the indictment was found. According to the conclusion which we have come to in regard to the decision in the Spratley Case, if the agents' authority had not been limited to merely soliciting orders, if they had been empowered to make sales, and if the contracts of sale were to be performed by delivery to the purchasers within the jurisdiction, the defendant would have been suable therein. Why, then, should the mere fact that the agents had

no power to make sales, and that the contracts were to be performed outside of the jurisdiction make a difference as to its suability therein? Is it not just as reasonable that it should be suable therein in the one case as in the other? The existence of the cause of action was due to the defendant's entry into the jurisdiction where suit was brought and seeking out persons therein with whom to enter into contracts. Here it may be said, as before, if the jurisdiction was good enough to enter for such purpose, it was good enough to be sued therein on a cause of action growing out of such entry.

The next case to be considered is the Alexander Case. The defendant in that case was a railroad transportation corporation. The suit against it grew out of a shipment of poultry from Waco, Tex., to New York City. It was to recover damages for negligence in failing to properly ice and re-ice the poultry in the course of shipment. The defendant was a Texas corporation. It was the initial carrier, and the contract of shipment was made with it. But by virtue of the Carmack Amendment its contract was a contract to deliver the poultry in the city of New York, and the connecting carriers through whom delivery was to be made were its agents. In legal effect the case was the same as if defendant's line had extended to that city. Possibly it is open to say that the case comes within the Kane Case in that the suit was brought in the jurisdiction in which the defendant's line ideally terminated. But, apart from this, suability in that jurisdiction can be based on the fact that the contract of shipment was to be performed therein. This was the sole relation which the contract had with that jurisdiction. But that relation would seem to have been sufficient to render the defendant subject to suit therein. No place was more suitable or convenient for the determination of the question whether the contract had been performed; i. e., whether the poultry had been injured by the failure to so ice and re-ice it. The defendant maintained an office there in charge of a general passenger and freight agent who handled the settlement of such claims and had investigated and considered the settlement of this claim. It is to be noted that in this case the maintenance of this office, which seems to have been identical with that maintained in Philadelphia by the defendant in the Green Case, was held to meet the requirement of the dualism of the abstract statements as to doing business in the jurisdiction where suit is brought. Furthermore, it is like the Meyer Case in that service of process was had on a director.

I come now to the last case on the list, to wit, the Real Estate Trust Company Case. The defendant there was a Virginia corporation. It operated electric railway lines from Mt. Vernon to Alexandria, in Virginia, and from that city to Washington, in the District of Columbia. The suit was brought to recover judgment on certain bonds made by its predecessor in title as to one of its lines and assumed by it. It was brought in the Eastern district of Pennsylvania. Defendant's charter provided that it might have offices outside of Virginia. It maintained offices at Mt. Vernon, Washington, and Philadelphia. It called the office at Mt. Vernon its principal office, and that at Philadelphia its general transfer office. Its president, treasurer, and bookkeeper all lived

at Philadelphia and occupied its office there. It kept its regular books therein and had its bank account in that city. Service of process was had on the president. The plaintiff's full name was the Real Estate Trust Company of Philadelphia. It seems to have been a Pennsylvania corporation. It owned the building in which the defendant had its Philadelphia office and seems to have transacted such business as it did in that city therein. It is not unlikely that the bonds in suit were sold to it there. If so, its acquisition thereof took place in the jurisdiction where suit was brought. But apart from this consideration it was reasonable that it should be subject to suit in that jurisdiction. The cause of action asserted was upon its bonds. Its officers who had charge of any defense which it desired to make lived there, and all its books and papers were there. It was the most convenient jurisdiction in which to litigate the liability on the bonds for both parties. On this view of the case—i. e., that the bonds were not sold to plaintiff in Philadelphia—it provides us with another exception to the general rule drawn from the Green Case. Jurisdiction was upheld notwithstanding that the contracts on which the suit was brought were entirely foreign to the jurisdiction in which the suit was brought. It finds justification in the facts that service of process was had on its president therein, and that the defendant was suable therein, in that, under the circumstances of the case, it was reasonable that it should be subject to suit therein.

Having thus considered these concrete decisions in detail, I would sum up what is to be gathered from them—i. e., what is implicit in them:

(1) The existence of jurisdiction to determine the personal liability of a corporation in a foreign jurisdiction depends on the reasonableness of its exercise. If it is reasonable that it be exercised, it exists. If, on the other hand, it is not reasonable, it does not exist. This fundamental principle lies at the basis of these decisions. In those of them where it was held that jurisdiction did not exist, at bottom, it was because it was not reasonable that it should be exercised. In those where it was held that it did exist, at bottom, it was because it was reasonable that it should be exercised.

(2) There is an absolute living rule applicable to all of such cases, and which in itself may be determinative of the question as to the existence of jurisdiction. It is that defendant must have reasonable notice of the pendency of the suit. In order to this, such notice must be given to an agent of the defendant. It cannot be otherwise notified. And such notice must be given to such agent in the jurisdiction where suit is brought. Notice to any agent therein is not sufficient. He must be its representative therein. Usually where such representative capacity exists he is acting therein on behalf of the corporation by its authority. But, in order to such representative capacity, it is not essential that he be so doing. It is sufficient if he has been authorized to receive service of process. This authority may be given by express agreement as a condition to its being permitted to enter the jurisdiction and do business therein. Or it may be implied from its entering and doing business therein if the statute thereof provides for suit against

it and service of process on him. Possibly it is only when authority has been conferred in one or the other of these two ways that it is to be said that an agent has authority to receive service of process, a statement that he had such authority otherwise being a pure fiction, all that is meant thereby being that his agency is such that notice to him is notice to the corporation. No corporation ever authorizes an agent to receive service of process unless it has to as a condition of obtaining some benefit. Possibly also, where authority has been so conferred, expressly or impliedly, it is not the only instance where an agent who is not acting in the jurisdiction on behalf of the corporation by its authority possesses such representative capacity that service on him will be sufficient. He may possess such capacity if his agency is such that it is reasonable to infer that he will convey notice of the suit to those whose duty it is to defend it on behalf of the corporation. This possibility is put in view of the decisions in the Meyer and Alexander Cases.

(3) But, in order to the existence of jurisdiction, it is not sufficient that service of process on the corporation's representative therein be had. The corporation must be suable in the foreign jurisdiction, and in order to this it must be reasonable that the defendant should be subject to suit therein.

(4) Prima facie a corporation is not suable in a foreign jurisdiction. The burden is on the plaintiff, who would hale it into court in such jurisdiction, to adduce some reasonable consideration for its being subject to suit therein. In the absence of such a consideration being adduced, jurisdiction does not exist.

(5) As a general living rule a corporation is not suable in a foreign jurisdiction on a cause of action, whether in tort or in contract, which is entirely foreign thereto. This is put as a general, and not absolute, rule, because there are exceptions to it. The only ground for denying jurisdiction of such cause of action, in any case, is that it is not reasonable that the corporation should be subject to suit in such jurisdiction. It is possible, however, notwithstanding such is the nature of the cause of action, that it may be reasonable that the corporation should be subject to suit therein. Of course, wherever the reason of the rule gives way, the rule itself should do so also. It is because of this that the rule is only a general rule and subject to exceptions. An exception thereto is that a transportation corporation is subject to suit in a foreign jurisdiction on such a cause of action when the jurisdiction is one through which its line runs or in which it terminates. Possibly cases may arise which call for a modification of this exception.

It is an exception thereto that any corporation is subject to suit in such a jurisdiction when, as a condition of its being permitted to enter and do business in it, it has agreed that it might be sued therein on such a cause of action.

Possibly an exception thereto is to be found, as heretofore indicated, in the Real Estate Trust Company Case, and possibly other exceptions may develop in the course of litigation. For it is never to be lost sight of that the controlling consideration to the suability of a corporation in any foreign jurisdiction is whether it is reasonable that it should be

subject to suit therein. Wherever such is the case, no matter what its character, it must be held that suability exists.

(6) But these and possibly other instances of exceptions to this general living rule are not the only instances of suability of a corporation in a foreign jurisdiction. I cannot see why it is not always suable therein if the cause of action on which suit is brought is not entirely foreign thereto; i. e., why at least substantial connection with such jurisdiction is not always a reasonable consideration why it should be subject to suit therein. It is always in the case of a tort. Where a tort is committed in a foreign jurisdiction by the agent of a corporation for which it is responsible, its connection therewith is entire. It has no connection with any other jurisdiction. It has never-been thought by any one that in the case of such a tort the corporation was not suable in the jurisdiction where the tort was committed. In the matter of connection it is different in the case of a contract. Its connection with the jurisdiction in which the suit is brought may be entire. It may be with a citizen thereof, have been made therein, relate to that which is therein, and to be performed therein. Such was the case as to the policy of insurance sued on in the Spratley Case. That case is, as I view it, a square decision in support of the position that suability exists in such a case. And why should it not? If suability as to a tort exists, why should not jurisdiction as to contract if its connection is also entire? But the connection of a contract with such a jurisdiction may not be entire. This, however, should not affect the corporation's suability therein. It is sufficient that its connection therewith is substantial; possibly it should be put that it is sufficient that it has some connection therewith. The decisions in the Meyer and Harvester Co. and Alexander Cases, as I view them, uphold this position. In the Meyer Case the contract in suit was made outside the jurisdiction where suit was brought—i. e., at the home office of the corporation—but it was made with a citizen of that jurisdiction as to property therein and was to be performed there. Furthermore, the policy holder was reached and solicited to enter into a contractual relation with the corporation by communications placed in the United States mail with the intent that they should be carried by it to him therein. In the Harvester Company Case the contracts were also made outside of such jurisdiction. They were, however, made with citizens thereof who were reached and solicited to so enter, not by the use of the mail, but by its agents sent by it into the jurisdiction for that purpose, and though the contracts were performed outside of the jurisdiction by delivering the machines f. o. b. cars at place of shipment, but they were so placed with the intent and purpose that they should be carried into such jurisdiction. In the Alexander Case the sole connection of the contract with the jurisdiction in which suit was brought was that it was to be performed therein. I think, however, that I am justified in saying that suability on a contract exists wherever it has substantial, possibly any, connection with the jurisdiction. This is so because it is reasonable that the corporation should be subject to suit in such jurisdiction on such a contract.

(7) The existence of suability in such jurisdiction on such a contract is not affected by the consideration that such contract is the only transaction had by the defendant which has had any connection with the jurisdiction. The ground of suability, and hence of jurisdiction, is the existence of such connection. And this connection is not affected by the want of any other transaction having connection therewith. Judge Knappen, in the case of Empire Feed Co. v. Lyons, 257 Fed. 890, 891, 169 C. C. A. 40, where the question of jurisdiction, which we have here, was before the court, and which he dealt with on the basis of the dualism of the abstract statements quoted, referred to the decision of the Supreme Court in the case of Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137. If he meant that the case was an authority for the position that "a sporadic or occasional sale" is not sufficient to confer jurisdiction of a cause of action arising out of the sale in the jurisdiction where it was made, I would submit that it is not an authority therefor. That case did not involve the question we have here. It involved only the question whether a single act of business was within the Nebraska statute which forbade foreign corporations to carry on business in that state without complying with its provisions. It is likely that all that Judge Knappen intended to be understood as saying was that that case was an authority for the position that such a sale did not constitute carrying on of business, which is true.

This completes what I have to say as to the concrete things decided by the Supreme Court in these 25 cases. In the case of Michigan Trust Co. v. Ferry, 228 U. S. 346, 33 Sup. Ct. 550, 57 L. Ed. 867, it is said:

"Ordinarily jurisdiction over a person is based on the power of the sovereign asserting it to seize that person and imprison him to await the sovereign's pleasure. But when that power exists and is exerted by service at the beginning of a cause, or if the party submits to the jurisdiction in whatever form may be required, we dispense with the necessity of maintaining the physical power and attribute the same force to the judgment or decree whether the party remains within the jurisdiction or not. This is one of the decencies of civilization which no one would dispute."

Again in the case of McDonald v. Mabee, 243 U. S. 90, 37 Sup. Ct. 343, 61 L. Ed. 608, L. R. A. 1917F, 458, it is said:

"And in states bound together by a Constitution and subject to the Fourteenth Amendment great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact."

In these two statements are to be found what is essential and all that is essential to jurisdiction in such a case as we have here. It is what the "decencies of civilization," according to the one, and "fair play," according to the other, require. Such is the synthesis of the concrete things decided by the 25 cases considered. Do the "decencies of civilization" and "fair play" require that the corporation shall be suable in the foreign jurisdiction? If so, and service of process has been had on an authorized agent, jurisdiction exists. If not, though service of process may be had on such an agent, it does not. In the treatment to which I have subjected these decisions I have aimed to bring them in

touch with fact—i. e., living reality—and to eliminate all fiction. I have found them all to be in line. There is not a note of discord anywhere. This is so, notwithstanding the Supreme Court did resort to fiction. It was the "decencies of civilization" and "fair play," working beneath the surface, which brought about this harmony. In the Spratley Case, as I view it, apart from the fact that process had been served on an authorized agent—i. e., one then acting on defendant's behalf, by its authority, in the jurisdiction where suit was brought, whose relation to it was such that it was reasonable to expect he would convey notice of the suit to the defendant—the controlling factor was that the policy in suit was, in its entirety, a Tennessee transaction. This consideration rendered it morally absurd that defendant was not suable in Tennessee, and that, whether or not, at the time of suit, it was doing business therein. The question of jurisdiction was disposed of the way it was, because the decisions in the Cox and Goldey-Morning News Cases were taken to require, as an indispensable element of jurisdiction, in addition to service of process on an authorized agent, that the defendant, at the time suit was brought, was doing business in the jurisdiction where it was brought. But so great was the force of that consideration that the receipt of premiums by its agent at Louisville, Ky., on policies issued before its withdrawal from Tennessee, which involved no doing on its part therein, was taken to meet this requirement. Thereafter, as in this case, it was the very right of the matter which dominated and brought about each of the subsequent decisions.

The most striking instance of this was in the Green Case. That case was exactly like the Spratley Case, in that service of process had been had, in the jurisdiction where suit was brought, on an authorized agent, though there was a radical difference in the character of the action he was taking therein on behalf of his principal. But otherwise the two cases are exactly opposites. In the Spratley Case the transaction out of which the suit grew was entirely domestic, whereas in the Green Case it was entirely foreign. It was this difference that brought about the difference in decision. As the court was under the influence of its dualism, first formally expressed in the Peterson Case, which was decided the same day as the Green Case was argued, it had to meet the question whether the business which was then being transacted on defendant's behalf in that jurisdiction measured up to the requirements of the first element of that dualism. Notwithstanding its magnitude and continuous character, it was held that it did not. It is impossible to account for this decision on any other ground than that it was the result of the force of the consideration that the transaction out of which the suit grew was entirely foreign to the jurisdiction in which the suit was brought. And so great was that force that that business was minimized into "solicitation," or, as put in the International Harvester Company Case, "mere solicitation." In the Alexander Case, the business, on which the question, as to whether the first element of the dualism was met, depended, was exactly the same as that in the Green Case. Notwithstanding this, jurisdiction was upheld. This is to be accounted for on the ground that there the urge was the other way. This was so because the contract sued on was to be performed in the

jurisdiction where the suit was brought, and defendant's line of transportation, though ideally so only, terminated therein. What I have done in my dealing with these concrete decisions of the Supreme Court has been to bring to the surface this ethical consideration as the controlling factor, apart from service on an authorized agent, in determining the question of jurisdiction in such cases.

[2] I go back now and come to close quarters with the motion in hand. If in so doing I leave out of consideration the real position of the Supreme Court, as I have developed it, and confine myself to its position as set forth in the statements from its opinions with which I opened the discussion, I cannot dispose of it with any feeling of certainty that I have done so correctly. There is no striking resemblance between the particular facts of this case and those of any of the cases in which the Supreme Court has dealt with that question. Favoring jurisdiction is the consideration that the action on the defendant bank's behalf in this state was not sporadic or occasional, but continuous. Against it is the consideration that such action was, comparatively speaking, inferior in quality, and insignificant in quantity. In the Green Case action of greater magnitude in quality and quantity, and continuous in character was held insufficient. This was, however, on the ground that it was nothing more than solicitation. In the International Harvester Co. Case jurisdiction was upheld on the ground that there was a continuous course of collection in the state where suit was brought. What we have here is a continuous course of collection. This would lead me to uphold jurisdiction, on this basis, if I were limited to it. But, when I come to look at the matter in the light of the Supreme Court's real position, as I have brought it to the surface, I have no hesitancy in so doing.

What is complained of herein is tortious conduct on the defendant bank's part. It consists, in the main, of the action of the individual defendant authorized by it. This action was taking place in this state and district when the suit was brought. Jurisdiction existed, at least, as against the individual defendant, to put a stop to such action without the presence of the defendant bank. This is not against the existence of jurisdiction as to it, in that thereby plaintiff could obtain such relief. It favors such jurisdiction. The defendant bank's right would necessarily be involved in a suit limited to the individual defendant, and it, and not she, ought to defend it, and, in the natural course of things, would do so. Jurisdiction existing as to such conduct, it should exist as to all wrongful conduct on the defendant bank's part of which plaintiff has the right to complain.

As I view it, it is reasonable that jurisdiction of this suit should exist as to the defendant bank. The "decencies of civilization" and "fair play" require that it should. It is therefore suable in this state and district. And service of process on the one through whom it is so conducting itself therein should be deemed to be sufficient to bring it before the court.

I cannot conclude without saying that the idea as to what is essential to jurisdiction in such a case as this, which I have advanced and developed, is not original with me. There is a hint of it in the decision of

286 F.—38

Judge Learned Hand in the case of Smolik v. P. & R. Coal & Iron Co. (D. C.) 222 Fed. 148, to which my attention was called by Prof. Scott's article entitled "Jurisdiction over Nonresidents Doing Business Within a State," 32 Harvard Law Review, p. 871.

The motion to quash is overruled.

## Appendix A.

In the French Case the validity of an Ohio judgment against an Indiana insurance corporation on a policy of fire insurance issued on property in Ohio in favor of an Ohioan was involved. Its validity was upheld. The statute of Ohio provided for suits against foreign corporations founded on contracts of insurance made therein with citizens thereof. One of its provisions was that service of process in such a suit on a resident agent of the corporation would be as "effectual as though the same were served on the principal." The defendant had a resident agent in Ohio authorized to make contracts of insurance through whom it made the contract in suit. Process had been served on him. Apparently the only objection made to the validity of the judgment was that the defendant was not suable in Ohio, and that on the ground that it could not be and was not present therein. This objection was held not to be well taken. The court then raised and determined the question whether the service of process on the resident agent was sufficient. It held that it was. This position was based on the ground that the defendant by doing business in Ohio had impliedly consented to such service and authorized the agent to receive it. It made this out in this way. Ohio had power to prohibit insurance companies from doing business therein. This it had not done. On the contrary, contemplating that they might do so, it provided for suits against them on contracts of insurance made therein and for such service of process in such suits. Thereby it in effect made their consent thereto a condition precedent to the right to do business therein. And by doing business therein they gave their consent. The court said:

"A corporation created by Indiana can transact business in Ohio only with the consent, express or implied, of the latter state. * * * This consent may be accompanied by such conditions as Ohio may think fit to impose; and these conditions must be deemed valid and effectual by other states, and by this court. provided they are not repugnant to the Constitution or laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each state from encroachment by all others, or that principle of natural justice which forbids condemnation without opportunity for defense. In this instance one of the conditions * * * was, in effect, that the agent who should reside in Ohio and enter into contracts of insurance there in behalf of the foreign corporation, should also be deemed its agent to receive service of process in suits founded on such contracts."

Again it said:

"Now, when this corporation sent its agent into Ohio, with authority to make contracts of insurance there, the corporation must be taken to assent to the condition upon which alone such business could be there transacted by them; that condition being that an agent, to make contracts, should also be the agent of the corporation to receive service of process in suits on such contract; and, in legal contemplation, the appointment of such an agent

clothed him with power to receive notice, for and on behalf of the corporation, as effectually as if he were designated in the charter as the officer on whom process was to be served, or as if he has received from the president and directors a power of attorney to that effect."

The dualism in question is not to be found in this case. Undoubtedly, in considering the question of jurisdiction affirmatively, much was made of the fact that the defendant did business in Ohio. This was relied on, however, as a subsidiary or evidentiary fact, not as an ultimate one. It was the basis of the position that the resident agent was authorized to receive service of process. By reason thereof it had conferred such authority on him. And it may be said that by reason thereof it had done not only this. It had also consented to its being sued in Ohio. In other words, a double consent was to be implied from its so doing—a consent that it might be sued in Ohio and further that service on its resident agent therein would be sufficient. There is nothing in the case that suggests the idea that in such cases, if process has been served on an authorized agent, it is essential also to jurisdiction that the corporation be doing business in the state. The case, however, does suggest a dualism in such cases, but not the one in question. It is this: In order to jurisdiction, it is essential not only that process be served on an authorized agent, but also that the corporation be suable in such jurisdiction. It suggests still further that this latter requirement may be met by its consent to being sued therein.

### Appendix B.

The suit in the Harris Case was brought in the District of Columbia against a Maryland railroad corporation whose railroad extended from Baltimore through the District into Virginia, to recover damages for a personal injury received in Virginia. The corporation had been permitted by an act of Congress to construct the railroad through the District. It does not appear on whom process was served. Jurisdiction of the suit was upheld. It was upheld on the ground that the act of Congress under which it had entered the District, as the court construed it, imposed liability to such suit on the corporation. The court said:

"But, turning our attention from this view of the subject and looking at the statute alone, and reading it by its own light, we entertain no doubt that it made the company liable to suit, where this suit was brought in all respects as if it had been an independent corporation of the same locality."

Nor is the dualism in question to be found in this case. It does, however, suggest also the other dualism to which I have referred, to wit, that service of process on an authorized agent is not sufficient to give jurisdiction. The corporation must be suable in the jurisdiction where sued, and this requirement may be met by a statute expressly imposing liability to suit authorizing it to do business therein.

### Appendix C.

The Cox and Goldey Cases are exactly alike in their ultimate facts. In the Cox Case the validity of a personal judgment rendered by a state court of Michigan against an Illinois corporation upon service of

process on its agent then in the county where the suit was pending in which the judgment was rendered, the record not showing that the corporation was then doing business in that state, was involved. The Goldey Case was a suit brought in a state court of New York, removed to the proper federal court therein, against a Connecticut newspaper corporation, to recover damages for an alleged libel. The corporation did no business of any kind in New York. Process had been served on its president whilst he was temporarily therein. It was held in the Cox Case that the judgment was invalid for want of jurisdiction, and in the Goldey Case that the suit was not maintainable, for the same reason. The ground upon which it was held that jurisdiction was lacking in each case was that the person on whom process was served did not represent the corporation in the foreign jurisdiction, and hence was not authorized to receive service of process. The service of process on him was no more effective in giving jurisdiction than if the process had been served on an entire stranger to the corporation. In so far as stress was laid in the Cox Case upon the fact that it did not appear that the corporation was doing business in Michigan, and in the Goldey Case upon the fact that it appeared that the corporation was not doing business in New York, it was in its bearing upon the representative capacity of the person on whom process had been served. It was merely subordinate to the ultimate fact whether he was the representative of the corporation in the foreign jurisdiction. He was not and could not be its representative therein, because, in the one case, it did not appear that the corporation was doing any business in Michigan, and, in the other, it appeared that it was not doing business of any kind in New York. In the opinion in the Cox Case it was first said generally that personal judgments of state courts had validity only when they had been rendered upon "personal citation of the party, or, what is the same thing, of those empowered to receive process for him, or upon his voluntary appearance." After referring to the decision in Pennoyer v. Neff that personal service of citation on an individual, nonresident in the jurisdiction where suit is brought, or his voluntary appearance, was essential to jurisdiction to render a personal judgment against him, the court continued as follows:

"The doctrine of that case applies, in all its force, to personal judgments of state courts against foreign corporations. The courts rendering them must have acquired jurisdiction over the party by personal service or voluntary appearance, whether the party be a corporation or a natural person. There is only this difference: A corporation, being an artificial being, can act only through agents, and only through them can be reached, and process must therefore be served upon them. In the state court where a corporation is formed it is not difficult to ascertain who are authorized to represent and act for it. Its charter or the statutes of the state will indicate in whose hands the control and management of its affairs are placed. Directors are readily found, as also the officers appointed by them to manage its business. But the moment the boundary of the state is passed difficulties arise; it is not so easy to determine who represent the corporation there and under what circumstances service on them will bind it."

It then took notice of the fact that it had been formerly held that a foreign corporation could not be sued, in an action to recover a personal demand, outside of the state by which it was chartered, and stat-

ed that this was based on the doctrine that a corporation must dwell in the place of its creation and cannot migrate to another sovereignty, "coupled with the doctrine that an officer of the corporation does not carry his functions with him when he leaves his state." This, it was said, resulted in an injustice and was met by legislation providing for service of process on officers and agents of foreign corporations doing business in the state. The rationale of this action it stated to be thus:

"Whilst the theoretical and legal view, that the domicile of a corporation is only in the state where it is created, was admitted, it was perceived that, when a foreign corporation sent its officers and agents into other states and opened offices, and carried on its business there, it was, in effect, as much represented by them there as in the state of its creation."

To the same effect, it said:

"The case is unlike that of suits against individuals. They can act by themselves, and upon them process can be directly served, but a corporation can only act and be reached through agents. Serving process on its agents in other states, for matters within the sphere of their agency, is, in effect, serving process on it as much so as if such agents resided in the state where it was created."

In support of the conclusion reached it cited and quoted from the opinion in a case from the Supreme Court of Michigan. That case involved the validity of service of process in a suit against a Canadian corporation on its treasurer, who was only casually in the state and not charged with any business of the corporation there. The service was held invalid. And the quotation was, in part, as follows:

"The corporate entity could by no possibility enter the state, and it could do nothing more in that direction than to cause itself to be represented here by its officers or agents. Such representation would, however, necessarily imply something more than the mere presence here of a person possessing, when in Canada, the relation to the company of an officer or agent. To involve the representation of the company here, the supposed representative would have to hold or enjoy in this state an actual present official or representative status. He would be required to be here as an agent or officer of the corporation, and not as an isolated individual. If he should drop the official or representative character at the frontier, if he should bring that character no further than the territorial boundary of the government to whose laws the corporate body itself, and consequently the official positions of its officers also, would be constantly indebted for existence, it could not, with propriety, be maintained that he continued to possess such character by force of our statute."

The only thing said in the opinion upon which the finger can be put as setting forth that absolutely—i. e., in all cases—doing business by the corporation in the particular jurisdiction is essential to jurisdiction, is this:

"We are of opinion that, when service is made within the state upon an agent of a foreign corporation, it is essential, in order to support the jurisdiction of the court to render a personal judgment, that it should appear somewhere in the record—either in the application for the writ, or accompanying its service, or in the pleadings or the finding of the court—that the corporation was engaged in business in the state."

The reason why it was essential that this should appear is to be gathered from what immediately follows in the opinion, to wit:

"The transaction of business by the corporation in the state, general or special, appearing, a certificate of service by the proper officer on a person

who is its agent there would, in our opinion, be sufficient prima facie evidence that the agent represented the company in the business. It would then be open, when the record is offered as evidence in another state, to show that the agent stood in no representative character to the company, that his duties were limited to those of a subordinate employé, or to a particular transaction, or that his agency had ceased when the matter in suit arose."

This shows that the essentiality of its appearing that the corporation is doing business in the state is not due to any virtue of the thing itself. It is solely for its bearing on the question whether the person on whom process has been served represents the corporation in the state. In the absence of its so appearing, it is to be taken that he does not. The thing that is essential is that he does so represent it, and subordinate and in order thereto it is essential that the corporation be doing business in the state.

In Goldey v. Morning News Mr. Justice Gray said:

"So a judgment rendered in a court of one state, against a corporation neither incorporated nor doing business within the state, must be regarded as of no validity in the courts of another state, or of the United States, unless service of process was made in the first state upon an agent appointed to act there for the corporation, and not merely upon an officer or agent residing in another state, and only casually within the state, and not charged with any business of the corporation there."

What, then, these two decisions stand for is that, in order to jurisdiction of a foreign corporation, it is essential that the person on whom process has been served shall represent the corporation to the extent of being authorized, expressly or impliedly, to receive such service on its behalf. In the absence of such representation jurisdiction is not acquired. It is not to be gathered therefrom that if, as a matter of fact, such person does so represent the corporation, it is essential in addition that it be then doing business in the state. The question of the suability of a corporation in a foreign jurisdiction was not involved in either one of these cases. Assuming it to be suable, jurisdiction of it cannot be acquired without service in such jurisdiction on an authorized agent. Jurisdiction was denied in each one of them because there had been no such service.

## Appendix D.

The case of Barrow S. S. Co. v. Kane presents an advance upon the case of Lafayette Insurance Co. v. French. As in that case, jurisdiction was upheld. In the French Case the ground upon which jurisdiction was upheld was, as we have seen, that the defendant corporation had impliedly consented to be sued in the foreign jurisdiction, and that process might be served on its resident agent. In this case there was no room to imply consent in either particular because the state statute made no provision for service of process in a suit of the character there involved. The defendant was a corporation of Great Britain. It operated a line of steamships between ports of that country and the city of New York by which it transported passengers and freight. It had an office in that city in charge of its general agent. The suit was brought in the United States Circuit Court for the Southern District of New York, and was to recover damages for an assault committed by

one of its agents in the port of Londonderry, Ireland. Process was served on its general agents in New York City. Suit could not have been brought in the state court of New York because the Code of Practice thereof made no provision for service of process in that state. The cause of action arose in the port of Londonderry, Ireland. And the provisions of that Code as to service of process on foreign corporations were limited to causes of action against them arising in that state. This being so, there was no room to imply, from the fact of the defendant corporation doing business in that state, any such consent. The jurisdiction was not and could not, therefore, have been based on the same ground as jurisdiction was based in the case of Lafayette Insurance Co. v. French. And the case did not come within the cases of St. Clair v. Cox and Goldey v. Morning News in that the general agents on whom process had been served did represent the corporation in New York with authority to receive service of process. They did so because it was doing business in New York in that those agents were acting therein on its behalf by its authority. They represented it in that business in the capacity of general managers thereof. This was the sole effect given to such consideration. It is not to be gathered from the opinion therein that its doing business in New York had any other significance than this. There was, however, a real dualism in this case. That process had been served on those who represented the corporation in that jurisdiction was not alone sufficient to the maintenance of the suit. Another consideration was essential thereto, which is set forth in the opinion. I am only concerned here to show that the dualism in question did not arise in this case.

## Appendix E.

The Spratley Case was like the French Case, in that it involved a suit on an insurance policy, the policy being one of life insurance. It was the second of the numerous insurance cases which have been before the Supreme Court involving the question we have here. The corporation was a Connecticut corporation. The policy in suit was issued upon the life of a citizen and resident of Tennessee. After his death a default judgment was obtained in one of the courts of that state, and thereafter suit was brought in the same court to set it aside on the ground that it was invalid for want of jurisdiction. This it refused to do. On appeal to the state Supreme Court this decree was affirmed, and on appeal to the Supreme Court of the United States the action of that court was likewise affirmed. Thus the Supreme Court upheld the jurisdiction of the state court to render the default judgment. The corporation did a life insurance business in Tennessee from February 1, 1870, to July 1, 1894. Shortly after March 22, 1875, pursuant to an act of that date so requiring, as a condition of its right to continue to do business therein, it filed with the insurance commissioner a power of attorney authorizing the secretary of state to acknowledge service of process for and in behalf of it even though the company might have retired or been excluded from the state. In 1887 an act was passed providing for suits against foreign corporations doing business therein and service of process upon any agent of the corporation found with-

in the county where the suit was brought, no matter what might be the character of his agency. The policies in suit were issued before July 1, 1894, when the corporation ceased issuing any new policies in the state and withdrew its agents therefrom, notifying the insurance commissioner to that effect. The insured died and the suit was brought after that date. Process was served upon an adjuster of the corporation sent into the state by the corporation to adjust and pay the loss. Notice of the pendency of the suit was given to the corporation at its home office by registered letter and personal service there of a copy of the process, which was in accordance with the provisions of the statute. In support of the position taken that the adjuster had authority to receive service of process, the court had this to say:

"It is admitted that the person upon whom process was served was an agent of the company. Was he sufficiently representative in his character? He was sent into the state as such agent to investigate in regard to this very claim, and whilst there he was empowered to compromise it within certain stated terms, leaving him a certain discretion as to the amount. * * * He did not leave his character as agent when he entered the state. On the contrary, it was as agent, and for the purpose of representing the company therein, that he entered the state. * * * Why was he not such an agent as it would be proper to serve process upon? He had been appointed as agent by the company; his whole time and services were given to the company under an appointment made years previously; he received a salary from the company not dependent upon any particular service at any particular time. The company having issued policies upon the life of an individual who had died, and a claim having been made for payment in accordance with the terms of those policies, the company clothed him with authority to go into the state, and in its behalf investigate the facts surrounding the claim, and authority was given him to compromise it upon terms which left to him discretion to some extent as to the amount of payment. He was not a mere agent appointed for each particular case. He was employed generally, by the company, to act in its behalf in all cases of this kind and as directed by the company in each case. Entering the state with this authority, and acting in this capacity, the company itself doing business within the state, it seems to us that he sufficiently represented the company within the principle which calls for the service of process upon a person who is in reality sufficient of a representative to give the court jurisdiction over the company he represents. In view of all the facts, we think it a proper case in which the law would imply, from his appointment and authority, the power to receive service of process in the case which he was attending to."

The giving of notice of the pendency of the suit to the corporation at its home office was taken to strengthen the effect of the service of process on the adjuster. It said:

"We do not intimate that mere knowledge or notice * * * would be sufficient without a service on the agent in the state where suit was commenced, but we refer to it as a part of the facts in the case."

Such service of process was not regarded as sufficient in itself to give jurisdiction. It was assumed that something else was essential in addition thereto. And that something else was that the corporation was, at the time of such service, doing business in the state other than that which the adjuster was then doing on its behalf. What he was doing was not thought to be sufficient to amount to a doing of business by the corporation in the state such as to give jurisdiction. It was held

that it was doing such business in that it was collecting premiums on old policies issued before it withdrew from the state. It said:

"It cannot be said with truth, as we think, that an insurance company does no business within a state unless it has agents therein who are continuously seeking new risks and it is continuing to issue new policies upon such risks. Having succeeded in taking risks in the state through a number of years, it cannot be said to cease doing business therein when it ceases to obtain or ask for new risks or to issue new policies, while at the same time its old policies continue in force and the premiums thereon are continuously paid by the policy holders to an agent residing in another state, and who was once the agent in the state where the policy holders resided. This action on the part of the company constitutes doing business within the state, so far as is necessary, within the meaning of the law upon this subject. And this business was continuing at the time of the service of process on Mr. Chaffee in Memphis."

Thus it was for the first time in the decisions of the Supreme Court that the fact that the foreign corporation was doing business in the state where suit had been brought was elevated from the subordinate position which it had theretofore occupied, i. e., as evidentiary either of consent or of the fact that the person on whom process had been served represented it therein, to equal rank with the fact that such person represented it, i. e., as a separate, distinct, and independent fact as essential as that fact to the existence of jurisdiction. Though jurisdiction was upheld on such basis, possibly it might have been upheld on the basis of consent and such service. As required by the act of 1875, it had authorized the secretary of state to acknowledge service of process after it should withdraw from the state as a condition to its being permitted to enter it. Possibly this was unaffected by the act of 1887 providing for other service, so that service on the secretary of state would have been sufficient. Possibly also by continuing to do business after the act of 1887 it gave consent to service thereunder, which remained unaffected by its subsequent withdrawal. Such a basis of jurisdiction was hinted at by the court in these words:

"Although the Legislature, by the act of 1875, provided for service of process upon a particular person (the secretary of state), in behalf of a foreign corporation, and the company had, pursuant to the provisions of the act, duly appointed that officer its agent to receive process for it, nevertheless the Legislature provided by law in 1887 for service upon other agents, and the company continued thereafter to do business in the state. Continuing to do business, the company impliedly assented to the terms of that statute, at least to the extent of consenting to the service of process upon an agent so far representative in character that the law would imply authority on his part to receive such service within the state."

But it is to be noted that in reality jurisdiction was not based on the ground that the corporation had consented to its being sued in Tennessee, and that service had been had on an authorized agent, but on the ground that at the time suit was brought the corporation was doing business in Tennessee other than that which it was doing therein by its adjuster, and that such service had been had. It is here, therefore, that the dualism in question first emerged in the opinions of the Supreme Court.

## Appendix F.

In the Phelps Case the defendant corporation had been licensed to do business in Kentucky upon its filing with the insurance commissioner a resolution adopted by its board of directors consenting that service of process upon such commissioner in an action brought in the state should be a valid service upon that company. Subsequently the license was revoked. Thereafter suit was brought upon a policy of insurance issued whilst it was doing business in the state. The jurisdiction was upheld on the ground of the existence of the two facts which were assumed to be essential thereto. The court presented one of them in these words:

"It was stipulated between the parties that the outstanding policies existing between the association and citizens of Kentucky were continued in force after the action of the insurance commissioner on October 10, 1899, and that on said policies the association had collected and was collecting dues, premiums, and assessments. It was therefore doing business within the state. [Connecticut] Mutual Life Ins. Co. v. Spratley, 172 U. S. 602."

It presented the other in these words:

"The plaintiff was a citizen of Kentucky, and the cause of action arose out of transactions had between the plaintiff and defendant while the latter was carrying on business in the state of Kentucky under license from the state. Under those circumstances the authority of the insurance commissioner to receive summons in behalf of the association was sufficient. Such was the ruling of the Court of Appeals."

## Appendix G.

The Meyer Case was an action in New York on a fire insurance policy issued by a Pennsylvania corporation whose office was in Philadelphia on property in New York. The corporation had no agent in New York representing it in receiving applications for and delivery of policies of insurance. The applications were sent to it at Philadelphia by mail, and the policies returned in like manner. In case of losses it sent its agents into New York to adjust them. Three of its directors resided in New York, but neither one ever did any act therein on its behalf. The only acts done by them on its behalf was to attend from time to time the meetings of the board of directors in Philadelphia and there give advice and take action in connection with its business as seemed to them proper. The Code of Practice authorized service of process in a suit against a foreign corporation on a director if the cause of action arose in that state. Process had been served on one of these directors. The cause of action having arisen in New York, the jurisdiction was upheld on the ground of the existence of the two facts, to wit, that the corporation was doing business at that time in New York, and that the service of process on the director was proper. The director had nothing to do with the business which it was held the corporation was doing in the state. As stated, he himself had nothing whatever to do on behalf of the corporation in the state. The business which it was held it was doing therein was the adjustment of fire losses through agents sent into the state for that purpose. This case presents in its baldest form the dualism in question. Here, too, possibly

it can be worked out that the corporation had consented to its being sued in New York on the policy in suit. The Code of Practice thereof provided for suits against a foreign corporation on causes of action arising therein and for service of process on a director. The defendant had a right to procure policies of insurance from owners of property in New York in the way in which it did—i. e., through the use of the mail—without the consent of that state. But it had no right to send its adjusters therein to investigate and settle losses. This perhaps was essential to its being willing to procure policies therein. By sending its adjusters therein it impliedly consented to its being sued on causes of action arising thereon therein and to service of process being had on its director. But no mention was made of this possible basis of jurisdiction. There is no indication that it had occurred to the court. As stated, jurisdiction was based on the two facts that the defendant was then doing business in New York in that it had sent its adjusters therein and purposed to continue so to do, and that process had been served on its directors.

## Appendix H.

In the case of Ex parte Schollenberger the question involved was whether the federal court of the Eastern District of Pennsylvania had jurisdiction of suits against certain foreign insurance companies, process on which had been service on agents designated by them to receive such service as a condition of being permitted to do business therein under a statute thereof so providing. It was claimed that the court was without jurisdiction because of the venue clause of the jurisdictional act of 1875 then in force which forbade the bringing of suits "against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceeding." 18 Stat. 470. Notwithstanding this provision, the jurisdiction was sustained. The court in its opinion uses language which seems to base the decision on the ground that the foreign insurance companies were found in the district when the suit was brought. It said:

"It is unnecessary to inquire whether these several companies were inhabitants of the district. The requirements of the law, for all the purposes of this case, are satisfied if they were found there at the time of the commencement of the suits; and that question, we think, was settled in Railroad Company v. Harris, 12 Wall. 65."

But it does not stop here. It proceeds to analyze and interpret that decision, and, according to its interpretation, the ground thereof was not merely that the statute under which the corporation entered the District of Columbia rendered it subject to suit, but also that the corporation by so entering consented to its being sued in the courts thereof. It then continues to state in other language the ground upon which jurisdiction in that case was sustained. It said:

"Applying these principles to the present case, there cannot be any doubt, as it seems to us, of the jurisdiction of the circuit court over these defendant companies. They have in express terms, in consideration of a grant of the privilege of doing business within the state, agreed that they may be sued

there; that is to say, that they may be found there for the purposes of the service of process."

And again it said:

"A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter; but it may by its agents transact business anywhere, unless prohibited by its charter or excluded by local laws. Under such circumstances, it seems clear that it may, for the purpose of securing business, consent to be 'found' away from home, for the purposes of suit as to matters growing out of its transactions. The act of Congress prescribing the place where a person may be sued is not one affecting the general jurisdiction of the courts. It is rather in the nature of a personal exemption in favor of a defendant, and it is one which he may waive. If the citizenship of the parties is sufficient, a defendant may consent to be sued·anywhere he pleases, and certainly jurisdiction will not be ousted because he has consented. Here the defendant companies have provided that they can be found in a district other than that in which they reside, if a particular mode of proceeding is adopted, and they have been so found. In our opinion, therefore, the Circuit Court had jurisdiction of the causes, and should proceed to hear and decide them."

What was in effect held in this case was that the defendants had in advance of suit, as a condition of being permitted to do business in Pennsylvania, waived the personal exemption provided by the venue clause of the jurisdictional act. The case was in no wise different from the cases of In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164, and Western L. & S. Co. v. Butte & B. M. Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101, except in the fact that in those cases the waiver came after suit instead of before. The court, in the opinion in the Moore Case, quoted from the opinion in the Schollenberger Case that which I last quoted therefrom in support of the conclusion reached therein. Evidently the court felt the incongruity of its first statement that the defendant insurance companies had been found in the Eastern district of Pennsylvania, for it subsequently changed the form of the statement to one in which it was set forth that they had agreed to be found therein. It was truer to say that what they had done had no relation to the question of their being found in the district. It was merely a waiver of the personal exemption conferred by the venue clause, and that is the way it finally came to put the matter.

## Appendix I.

The McDonough and Simon Cases should be considered together. The action in the former was for a breach of contract, which contract, though it had some connection with the jurisdiction in which it was brought, was treated as if it were entirely foreign to the jurisdiction in which it was brought. The McDonough Case involved a default judgment rendered by a Pennsylvania state court against an Indiana life insurance corporation upon a policy of insurance carried on the life of a Pennsylvanian for the benefit of Pennsylvanians. Its validity arose in a suit on the judgment in an Indiana state court, which went ·from thence, through the Supreme Court of the state, to the Supreme Court of the United States. The judgment had been rendered upon service of process on the insurance commissioner of Pennsylvania. The stat-

ute thereof provided that no foreign insurance company should do business therein until it had filed with such commissioner a stipulation whereby it agreed that "any legal process affecting" it might be served upon him with the same effect as if served personally on it within the state, and, after it ceased to do business therein, so long as any liability to any resident of the state continued. The corporation had filed no such stipulation. Notwithstanding this, at the time the policy in suit was issued, it had done and was then doing some business in the state, in what way not appearing. The policy provided that it should be deemed to have been made at the corporation's office in Indiana, and that all benefits and claims thereunder should be payable thereat. It further provided that, if suit was not brought thereon within a certain time after it matured, it should become void. This time had expired when the suit was brought. To obviate this difficulty, the complaint or petition in the suit claimed that the policy was an Indiana contract and governed by the laws thereof, under which this provision was invalid. The Supreme Court adjudged the judgment to be void for want of jurisdiction in the Pennsylvania state court to render it, and this on the ground that it was an Indiana contract. Its position was that the courts of Pennsylvania could acquire no jurisdiction of suits on policies executed outside of the state by a foreign insurance company doing business in the state without complying with the statute by service of process on the insurance commissioner. It conceded that they could acquire jurisdiction of such suits as to policies executed within the state. It based this on the ground that by "going into Pennsylvania without first complying with the statute" the corporation should be "held to have assented to the service upon the insurance commissioner." The court said:

"If an insurance corporation of another state transacts business in Pennsylvania without complying with its provisions, it will be deemed to have assented to any valid terms prescribed by that commonwealth as a condition of its right to do business there; and it will be estopped to say that it had not done what it should have done in order that it might lawfully enter that commonwealth and there exert its corporate powers."

"Such assent," however, it said, "cannot properly be implied where it affirmatively appears, as it does here, that the business was not transacted in Pennsylvania."

And, continuing, it said:

"While the highest consideration of public policy demand that an insurance corporation, entering a state in defiance of a statute which lawfully prescribes the terms upon which it may exert its powers there, should be held to have assented to such terms as to business there transacted by it, it would be going very far to imply, and we do not imply, such assent as to business transacted in another state, although citizens of the foreign state may be interested in such business."

The Simon Case involved the validity of a default judgment rendered against a Virginia railroad corporation, no part of whose railroad was in Louisiana, but which did some business therein, in what way not appearing, to recover for personal injuries received by plaintiff in Alabama whilst a passenger on its railroad from Selma, Ala., to Meridian, Miss. Its validity arose in a suit in the federal court for

Louisiana to enjoin its enforcement. The judgment had been rendered upon service of process upon the assistant secretary of state. The statute thereof provided that every foreign corporation doing business therein should file a written statement, setting forth the places in the state where it was doing business and the name of the agents therein upon whom process might be served, and that, if it did not do so, it might be sued "for any legal cause of action in any parish of the state where it may do business, and service of process in such suit may be made upon the secretary of state [of] the same and with the same validity as if such corporation had been personally served." Act No. 54 of 1904, La., § 2. A distinction is to be noted between this statute and the Pennsylvania statute in the McDonough Case. A foreign insurance company doing business in Pennsylvania without complying with its statute could properly be said to be doing business therein in defiance thereof, whereas a foreign corporation doing business in Louisiana without complying with its statute could not well be said to be so doing business therein. It did not forbid doing business therein until the corporation had complied therewith. It contemplated that it might do business therein without so doing, and provided that in that contingency service of process might be had on the secretary of state. All that could be said of a corporation who had failed to so comply was that it was a lawbreaker in not filing the required statement. The judgment was adjudged to be void for want of jurisdiction in the Louisiana state court to render it, and this on the ground that the cause of action "arose within the state of Alabama"—i. e., it was entirely foreign to the state of Louisiana, where it was attempted to be enforced. The court said:

"This power to designate by statute the officer upon whom service in suits against foreign corporations may be made relates to business and transactions within the jurisdiction of the state enacting the law. Otherwise claims on contracts, wherever made, and suits for torts, wherever committed, might by virtue of such compulsory statute be drawn to the jurisdiction of any state in which the foreign corporation might at any time be carrying on business. The manifest inconvenience and hardship arising from such extraterritorial extension of jurisdiction, by virtue of the power to make such compulsory appointments, could not defeat the power if in law it could be rightfully exerted. But these possible inconveniences serve to emphasize the importance of the principle laid down in Old Wayne Mut. Life Association v. McDonough, 204 U. S. 22, that the statutory consent of a foreign corporation to be sued does not extend to causes of action arising in other states."

It said further:

"The service on the Southern Railway, even if in compliance with the requirements of Act 54, was not that kind of process which could give the court jurisdiction over the person of the defendant for a cause of action arising in Alabama."

Seemingly it was assumed that the statute was broad enough to cover such a cause of action as was involved in that case. It provided expressly that, in the contingency that the foreign corporation had not filed the required statement, it might be sued "for any legal cause of action in any parish of the state where it may do business," and that service of process on the secretary of state should be sufficient. And it was so adjudged, notwithstanding that there was room for implying or inferring that the corporation by doing business in Louisiana had con-

sented that it might be sued on any cause of action which included one arising in Alabama, and that process might be served in such suit on the secretary of state. The effect of the decision, therefore, would seem to be that it is beyond the power of a state to provide that process may be served on a foreign corporation doing business therein in suits on causes of action entirely foreign thereto by service thereof upon a person of its choice. It did not recognize the existence of such power on the basis that the foreign corporation by doing business in the state, knowing that the statute so provided, impliedly consented that it might be so sued and that process might be so served. Had the statute merely provided for suits upon causes of action arising in Louisiana, the judgment might have been accounted for on the ground that the consent implied from doing business in the state was limited to such causes of action. But the court proceeded on the assumption that the statute was broad enough to cover any cause of action and refused to imply consent from doing business in the state as to causes of action entirely foreign thereto. And this apparently on the ground that the state had no power to so provide. The McDonough Case, owing to the difference in the terms of the statute heretofore pointed out, was somewhat different. There the foreign insurance corporation was not simply a lawbreaker in not complying with the statute, as was the case of the foreign railroad company in the Simon Case. It was, in doing business in Pennsylvania without complying with the statute, "an outlaw," to adopt the characterization of Judge Learned Hand in the case of Smolik v. P. & R. Coal & Iron Co. (D. C.) 222 Fed. 148. Having gone there in defiance of the statute, there was no room to imply consent that it might be sued therein, and that process might be served on the insurance commissioner, and this equally as well as to causes of action arising within the state as to those arising without it. Yet, as seen, it was conceded that assent would be implied as to the former and held that it would not be implied as to the latter. The assent, however, which it was conceded would be implied, was not a real consent. It was a pure fiction. Judge Hand in the case last referred to, as to this, said:

"When it is said that a foreign corporation will be taken to have consented to the appointment of an agent to accept service, the court does not mean that as a fact it has consented at all, because the corporation does not in fact consent; but the court, for purposes of justice, treats it as if it had. It is true that the consequences so imputed to it lie within its own control, since it need not do business within the state, but that is not equivalent to a consent; actually it might have refused to appoint, and yet its refusal would make no difference. The court, in the interest of justice, imputes results to the voluntary act of doing business within the foreign state, quite independently of any intent."

Judge Hand treats the McDonough and Simon Cases as substantially alike. And so does the Supreme Court in the case of Penna. Fire Ins. Co. v. Gold Issue M. & M. Co. There, in distinguishing that case from those two cases, it said:

"In the above-mentioned suits the corporations had been doing business in certain states without authority. They had not appointed the agent as required by statute, and it was held that service upon the agent whom they should have appointed was ineffective in suits upon causes of action arising

in other states. * * * If the business out of which the action arose had been local, it was admitted that the service would have been good, and it was said that the corporation would be presumed to have assented. Of course, as stated by Learned Hand, J., in 222 Fed. Rep. 148, 151, this consent is a mere fiction, justified by holding the corporation estopped to set up its own wrong as a defense. Presumably the fiction was adopted to reconcile the intimation with the general rules concerning jurisdiction."

Possibly the two cases are substantially alike. But it seems to me that there is the distinction which I have noted. It is true that the Pennsylvania statute provided that before doing business in the state every foreign insurance corporation should appoint the insurance commissioner as its agent, but the Louisiana statute did not provide that every foreign corporation before doing business therein should appoint the secretary of state its agent. It contemplated that every such corporation so doing should appoint its own agents and provided that it should file a statement setting forth their names, and that, if it did business therein without so doing it should be subject to suit and to service of process on the secretary of state.

The decisions in these two cases, therefore, settle that in such a case where there is room possibly of implying consent as a matter of fact, as where there is not, the consent implied, being a pure fiction, will be limited to causes of action arising within the state. It is not broad enough to cover those which arise outside thereof. That this is so is because the purposes or interests of justice so require. There is a natural revulsion against the idea of a corporation being sued in a foreign jurisdiction on causes of action entirely foreign thereto which found expression in these two judgments. The cause of action in the McDonough Case, however, had some relation to the jurisdiction in which the suit was brought—i. e., the state of Pennsylvania. The policy sued on was issued on the life of a Pennsylvanian, and the beneficiaries thereof were Pennsylvanians. And it is not unlikely that its issuance was brought about by the corporation sending its agent into that state to solicit the application therefor, which was forwarded by him to the home office in Indiana, and there accepted by it, thus making it an Indiana contract. The probability is that it was in this way that it was doing business in Pennsylvania—i. e., by soliciting applications for policies therein through its agent sent there for that purpose. The decision in the case cannot, however, be claimed an authority for the position that, if the requirement as to notice had been met, as it was in the Spratley Case, or in the Meyer Case, this relation to that state would not have been sufficient to give a proper Pennsylvania court jurisdiction of a suit on the policy. This is so because suit therein was barred by the provision in the policy as to the time within which suit thereon should be brought which was valid in that state. No faith or credit was to be given in Indiana to a judgment obtained in Pennsylvania which could only have been obtained therein on the basis that it was an Indiana contract and governed by the laws thereof and was actually obtained on that basis. The decision, therefore, leaves open the question whether in such a case, the requirement as to notice being so met, jurisdiction in the foreign state exists. In the Simon Case the

cause of action sued on had no relation whatever to the jurisdiction in which suit was brought.

## Appendix J.

The Hunter Case involved the validity of a default judgment of a North Carolina state court against a New York life insurance corporation on five policies of insurance. A statute of that state, enacted March 6, 1899, provided that no foreign insurance company should do business therein until it had filed with the secretary of state a power of attorney appointing the insurance commissioner its attorney "upon whom all lawful processes in any action or legal proceeding * * * might be served" (Laws N. C. 1899, c. 54, § 62), and agreeing that his authority should continue in force irrevocable so long as any liability should remain outstanding in the state. Before its enactment provision was made for service of process upon a local representative. The defendant had theretofore been doing business in the state, and thereupon complied with this statute. By another act, passed about the same time, all insurance companies doing business in the state were required by June 1, 1899, to become domestic corporations or withdraw from the state. In May, 1899, the defendant under the compulsion of this statute withdrew and revoked its power of attorney. Thereafter the suit in which the judgment in question was rendered was brought and service of process was had on the insurance commissioner. One of the policies on which suit was brought was issued to a citizen of the state whilst the corporation was doing business therein. Three were issued before March 6, 1899, in New York to citizens thereof, and one was issued before that date in New Jersey to a citizen thereof. All policies had been assigned to plaintiff, a citizen of North Carolina. The judgment was held valid as to the North Carolina policy and invalid as to the New York and New Jersey policies. It was contended on behalf of plaintiff that service on the insurance commissioner was sufficient as to the foreign policies on two grounds. One was that after its withdrawal it had continued to do business in the state, and hence it was subject to such service of process the same as if there had been no withdrawal. The other was that he was entitled to the benefit of the statute continuing in force the authority of the insurance commissioner after withdrawal. Both positions were held to be untenable. That provision of the statute was held to be for the benefit of domestic policy holders only. As to the business done after the withdrawal which related solely to old transactions in the state it was held that it was not such as to make it as if there had been no withdrawal. Had there been no withdrawal, the case would have presented the question whether the defendant was thus subject to service of process in this foreign jurisdiction as to these policies which were entirely foreign thereto. The statute was broad enough to cover such suit as to these policies in that contingency. It provided for service of process on the insurance commissioner "in any action or legal proceedings." If, however, after the withdrawal service of process had been had on an adjuster of the defendant who had been sent into the state to settle the loss accruing under a domestic policy as in the Spratley Case, no question as to the

sufficiency of the service of process could have arisen. Under the decision in that case the service was sufficient. But the question would have arisen as to whether defendant was suable in that jurisdiction on those foreign policies. Possibly it is open to say that the court, in giving the first of the two contentions put forward by plaintiff the consideration which it did, assumed that in either contingency jurisdiction would have existed. But clearly it would not have been reasonable, but arbitrary, to have compelled the defendant to go to North Carolina to litigate its liability on policies issued to citizens of New York and New Jersey in those states. And the decisions in the Green, McDonough, and Simon Cases are against the existence of such jurisdiction.